FILED

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

2015 DEC 31  P 12: 07

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

ASSOCIATED RECOVERY, LLC          )
1623 Central Avenue, Suite 201     )
Cheyenne, Wyoming 82001            )
                                   )
    *Plaintiff,*              )          Civil Action No. 1:15-CV-1723
                                   )          (AJT/JFA)
  v.                             )
                                   )
JOHN DOES 1-44                     )
                                   )
    *Defendants in rem.*     )
                                   )
_____)

In re:

| | | |
|---|---|---|
| 744.COM | OCU.COM | YEY.COM |
| 028.COM | PIXIE.COM | YGX.COM |
| 3DCAMERA.COM | QMH.COM | YJR.COM |
| FNY.COM | RUTEN.COM | YJX.COM |
| FX2.COM | SDU.COM | YLZ.COM |
| FXF.COM | SQG.COM | YQP.COM |
| JTZ.COM | TAOLV.COM | YQT.COM |
| KGJ.COM | UHW.COM | YRN.COM |
| KMQ.COM | VCZ.COM | YTE.COM |
| KOU.COM | VGJ.COM | YYG.COM |
| KXQ.COM | WYD.COM | ZDP.COM |
| KXW.COM | XAQ.COM | ZHD.COM |
| LNM.COM | XFF.COM | ZULIN.COM |
| LUOHE.COM | XSG.COM | ZZM.COM |

| MEQ.COM | YCX.COM | |
|---------|---------|---|

## VERIFIED COMPLAINT

Plaintiff Associated Recovery, LLC, by counsel, alleges as follows for its Complaint against Defendants:

## NATURE OF THE SUIT

1.      This is an action for violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) and for the return of Plaintiff's property under Virginia law.

2.      Associated Recovery, LLC ("Associated Recovery" or the "Plaintiff") seeks injunctive and other equitable relief as a result of the actions of the Defendants John Does, persons of unknown identity, who gained unauthorized control of the Plaintiff's and/or the Plaintiff's predecessor-in-interest's domain names, causing irreparably injury to the Plaintiff.

## PARTIES

3.      The Plaintiff is a Limited Liability Company organized and existing under the laws of Wyoming with a principal business address of 1623 Central Avenue, Suite 201, Cheyenne, Wyoming 82001. The Plaintiff's predecessors-in-interest include Novo Point LLC ("Novo Point"). Novo Point's predecessor's-in-interest include Jeffrey Baron ("Baron") and Ondova Ltd. ("Ondova"). Baron acquired the Subject Domain Names, either on his own behalf or on behalf of Ondova, at various times in or around 2001 to 2004. By 2010 Novo Point was the registrant of the Subject Domain Name and Novo Point remained the registrant and used the domain names to operate e-commerce websites until sometime in 2012 when the Subject Domain Names were wrongfully transferred from Novo Point. Novo Point was, and now the

2

Plaintiff is, the rightful owner of the Subject Domain Names.

4.      The Plaintiff is the assignee for consideration of the rights to recover the Subject Domain Names and damages associated with the loss of their profitable use. The Plaintiff brings and files this action as the transferee of all rights of Baron and Novo Point in the claims contained herein.

5.      744.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "ID Shield Service" of "5/F Hong Kong Trade Centre, 161-167, DesVoeux Road Central, Hong Kong, 999077, China." Upon information and belief, "ONLINEINC, INC." is the name of the domain name registrar to which 744.COM was transferred without authorization, and is the current registrar for 744.COM. A copy of the current domain name registration record for 744.com is attached as Exhibit 1.

6.      028.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "Liuxiaosheng" of "Jiajiahao building 18 floor, shen zhen shi, China." Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which 028.COM was transferred without authorization, and is the current registrar for 028.COM. A copy of the current domain name registration record for 028.com is attached as Exhibit 2.

7.      3DCAMERA.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "taesong chong" of "D-805 central star, bujeion jin-gu, busan, Korea." Upon information and belief, "ENOM, Inc." is the name of the domain name registrar to which 3DCAMERA.COM was transferred without authorization, and is the current registrar for

3DCAMERA.COM. A copy of the current domain name registration record for 3dcamera .com is attached as Exhibit 3.

8.    FNY.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "zhiqiangjin" of "wenyi road no.75, Hangzhoushi, Zhejiang, China." Upon information and belief, "ENmae Technology Co., Ltd." is the name of the domain name registrar to which FNY.COM was transferred without authorization, and is the current registrar for FNY.COM. A copy of the current domain name registration record for fny.com is attached as Exhibit 4.

9.    FX2.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "xiafeng lin" of "132 jiuer road 5/f, shishi, fajian, China" Upon information and belief, "MAFF Inc." is the name of the domain name registrar to which FX2.COM was transferred without authorization, and is the current registrar for FX2.COM. A copy of the current domain name registration record for fx2.com is attached as Exhibit 5.

10.    FXF.COM is an Internet domain nanle which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "whoisguard protected" of "P.O. Box 0823-03411, Panama, Panama." Upon information and belief, "ENOM, Inc." is the name of the domain name registrar to which FXF.COM was transferred without authorization, and is the current registrar for FXF.COM. A copy of the current domain name registration record for fxf.com is attached as Exhibit 6.

11.    JTZ.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of

"liuming" of "Chang Su, A2-505 Linhai mountain villa, ShenZhen, 518003, China." Upon information and belief, "GoDaddy.Com, LLC" is the name of the domain name registrar to which JTZ.COM was transferred without authorization, and is the current registrar for JTZ.COM. A copy of the current domain name registration record for JTZ.com is attached as Exhibit 7.

12. KGJ.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "XiaoFeng Lin" of "132 Jiuer Road, 5/F ShiShi FuJian, 3627000 China." Upon information and belief, "MAFF, Inc." is the name of the domain name registrar to which KGJ.COM was transferred without authorization, and is the current registrar for KGJ.COM. A copy of the current domain name registration record for KGJ.com is attached as Exhibit 8.

13. KMQ.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "LinXiaoFeng" of "Xi# 215, quan zhou shi, fu jian, 362000 China." Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which KMQ.COM was transferred without authorization, and is the current registrar for KMQ.COM. A copy of the current domain name registration record for kmq.com is attached as Exhibit 9.

14. KOU.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "WHOIS AGENT" of "17F, No.138 Zhognshan Avenue, Guangzhou, GD, 510000, China." Upon information and belief, "Guangzhou Ming Yang Information Technology Co., Ltd." is the name of the domain name registrar to which KOU.COM was transferred without

authorization, and is the current registrar for KOU.COM. A copy of the current domain name registration record for kou.com is attached as Exhibit 10.

15.    KXQ.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "LinXiaoFeng" of "Xi# 215, quan zhou shi, fu jian, 362000 China." Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which KXQ.COM was transferred without authorization, and is the current registrar for KXQ.COM. A copy of the current domain name registration record for kxq.com is attached as Exhibit 11.

16.    KXW.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "Xiamen eName Network Co., Ltd." of "Software Park wanghai Road No. 19, 603, Xiamenshi Fujian 361000 China." Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which KXW.COM was transferred without authorization, and is the current registrar forKXW.COM. A copy of the current domain name registration record for sdu.com is attached as Exhibit 12.

17.    LNM.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is registered without any information concerning the registration. Upon information and belief, "MAFF Inc." is the name of the domain name registrar to which LNM.COM was transferred without authorization, and is the current registrar for LNM.COM. A copy of the current domain name registration record for lnm.com is attached as Exhibit 13.

18.    LUOHE.COM is an Internet domain name which, according to records in

the WHOIS database of domain name registrations, is currently registered in the name of " xuhao " of "shenyang,liaoning,zhongguo, Shenyangshi, Liaoning, 200000 China" Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which LUOHE.COM was transferred without authorization, and is the current registrar for LUOHE.COM. A copy of the current domain name registration record for luohe.com is attached as Exhibit 14.

19.     MEQ.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "chenjinwu" of "kunming city, kun ming shi, yun nan, 650024 China." Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which MEQ.COM was transferred without authorization, and is the current registrar for MEQ.COM. A copy of the current domain name registration record for meq.com is attached as Exhibit 15.

20.     OCU.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "Whois Privacy Corp" of "Ocean Centre, Montagu Foreshore, East Bay Street, Nassau, Bahamas." Upon information and belief, "Internet Domain Services BS Corp." is the name of the domain name registrar to which OCU.COM was transferred without authorization, and is the current registrar for OCU.COM. A copy of the current domain name registration record for meq.com is attached as Exhibit 16.

21.     PIXIE.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "zhouhaijian" of "zhongdongluwujingzhidui, shui di qu, zhe jiang, 323000, China." Upon

7

information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which PIXIE.COM was transferred without authorization, and is the current registrar for PIXIE.COM. A copy of the current domain name registration record for pixie.com is attached as Exhibit 17.

22.    QMH.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "xucaijun, Hangzhou Xiaomai Financial Information Service Co., Ltd," of "please contact with 4.cn brokers, hang zhou shi, zhe jiang, 310019, China." Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which QMH.COM was transferred without authorization, and is the current registrar for QMH.COM. A copy of the current domain name registration record for qmh.com is attached as Exhibit 18.

23.    RUTEN.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "MrChen" of "Fujian, bei jing, bei jing, 100824, China" Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which RUTEN.COM was transferred without authorization, and is the current registrar for RUTEN.COM. A copy of the current domain name registration record for ruten.com is attached as Exhibit 19.

24.    SDU.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "Xiamen eName Network Co., Ltd." of "Software Park wanghai Road No. 19, 603, Xiamenshi Fujian 361000 China." Upon information and belief, "EName Technology Co.,

Ltd." is the name of the domain name registrar to which SDU.COM was transferred without authorization, and is the current registrar for SDU.COM. A copy of the current domain name registration record for sdu.com is attached as Exhibit 20.

25.    SQG.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "xucaijun, Hangzhou Xiaomai Financial Information Service Co., Ltd," of "please contact with 4.cn brokers, hang zhou shi, zhe jiang, 310019, China." Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which SQG.COM was transferred without authorization, and is the current registrar for SQG.COM. A copy of the current domain name registration record for sqg.comis attached as Exhibit 21.

26.    TAOLV.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "qinxiaohong" of "chong qing, chong qing, 400015, China." Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which TAOLV.COM was transferred without authorization, and is the current registrar for TAOLV.COM. A copy of the current domain name registration record for taolv.com is attached as Exhibit 22.

27.    UHW.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "zhaolei, Yueqing 365 Zhao Lei" of "zhe jiang, wen zhou shi, zhe jiang, 325600, China." Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which UHW.COM was transferred without authorization, and is the current registrar for UHW.COM. A copy of the current domain name registration record for

uhw.com is attached as Exhibit 23.

28.    VCZ.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "wangteng" of "chikanqu, zhan jiang shi, guang dong, 524000, China." Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which VCZ.COM was transferred without authorization, and is the current registrar for VCZ.COM. A copy of the current domain name registration record for uhw.com is attached as Exhibit 24.

29.    VGJ.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations is currently registered in the name of "Xiamen eName Network Co., Ltd." of "Software Park wanghai Road No. 19, 603, Xiamenshi Fujian 361000 China." Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which VGJ.COM was transferred without authorization, and is the current registrar for VGJ.COM. A copy of the current domain name registration record for vgj.com is attached as Exhibit 25.

30.    WYD.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations is currently registered in the name of "hanjim" of "shenzhen baoan, shen zhen shi, guang dong, 518100, China." Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which WYD.COM was transferred without authorization, and is the current registrar for WYD.COM. A copy of the current domain name registration record for wyd.com is attached as Exhibit 26.

31.    XAQ.COM is an Internet domain name which, according to records in the

WHOIS database of domain name registrations, is currently registered in the name of "LinXiaoFeng" of "Xi# 215, quan zhou shi, fu jian, 362000 China." Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which XAQ.COM was transferred without authorization, and is the current registrar for XAQ.COM. A copy of the current domain name registration record for xaq.com is attached as Exhibit 27.

32.   XFF.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "wuxizhen" of "wuyidadao, Changshashi, Hunan, 400000 China." Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which XFF.COM was transferred without authorization, and is the current registrar for XFF.COM. A copy of the current domain name registration record for xaq.com is attached as Exhibit 28.

33.   XSG.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "xucaijun, Hangzhou Xiaomai Financial Information Service Co., Ltd," of "please contact with 4.cn brokers, hang zhou shi, zhe jiang, 310019, China." Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which XSG.COM was transferred without authorization, and is the current registrar for XSG.COM. A copy of the current domain name registration record for xsg.com is attached as Exhibit 29.

34.   YCX.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "xucaijun, Hangzhou Xiaomai Financial Information Service Co., Ltd," of "please contact with 4.cn brokers, hang zhou shi, zhe jiang, 310019, China." Upon information and belief,

"EName Technology Co., Ltd." is the name of the domain name registrar to which YCX.COM was transferred without authorization, and is the current registrar for YCX.COM. A copy of the current domain name registration record for ycx.com is attached as Exhibit 30.

35.    YEY.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "YinSi BaoHu Yi KaiQi (Hidden by Whois Privacy Protection Service)" of "3/F.,HiChina Mansion,No.27 Gulouwai Avenue,Dongcheng District,Beijing 100120,China." Upon information and belief, "HiChina Zhicheng Technology Ltd." is the name of the domain name registrar to which YEY.COM was transferred without authorization, and is the current registrar for YEY.COM. A copy of the current domain name registration record for yey.com is attached as Exhibit 31.

36.    YGX.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "xucaijun, Hangzhou Xiaomai Financial Information Service Co., Ltd," of "please contact with 4.cn brokers, hang zhou shi, zhe jiang, 310019, China." Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which YGX.COM was transferred without authorization, and is the current registrar for YGX.COM. A copy of the current domain name registration record for ygx.com is attached as Exhibit 32.

37.    YJR.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "huangxuming, guangdong united foods co.,ltd." of "Rongsheng Technology Park,University Road, Shantou, Guangdong, 515021, China." Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which YJR.COM was

transferred without authorization, and is the current registrar for YJR.COM. A copy of the current domain name registration record for yjr.com is attached as Exhibit 33.

38. YJX.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "linchunmei" of "ruanjian yuan, Guangzhoushi, Guangdong, 510665, China." Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which YJX.COM was transferred without authorization, and is the current registrar for YJX.COM. A copy of the current domain name registration record for yjx.com is attached as Exhibit 34.

39. YLZ.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "ChenLongshui, Bozong Net.Ltd" of "shen zhen shi, guang dong, 518000, China." Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which YLZ.COM was transferred without authorization, and is the current registrar for YLZ.COM. A copy of the current domain name registration record for ylz.com is attached as Exhibit 35.

40. YQP.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "xucaijun, Hangzhou Xiaomai Financial Information Service Co., Ltd," of "please contact with 4.cn brokers, hang zhou shi, zhe jiang, 310019, China." Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which YQP.COM was transferred without authorization, and is the current registrar for YQP.COM. A copy of the current domain name registration record for yqp.com is attached as Exhibit 36.

41.     YQT.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "xucaijun, Hangzhou Xiaomai Financial Information Service Co., Ltd," of "please contact with 4.cn brokers, hang zhou shi, zhe jiang, 310019, China." Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which YQT.COM was transferred without authorization, and is the current registrar for YQT.COM. A copy of the current domain name registration record for yqt.com is attached as Exhibit 37.

42.     YRN.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations is currently registered in the name of "hanjim" of "shenzhen baoan, shen zhen shi, guang dong, 518100, China." Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which YRN.COM was transferred without authorization, and is the current registrar for YRN.COM. A copy of the current domain name registration record for yrn.com is attached as Exhibit 38.

43.     YTE.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations is currently registered in the name of "Lior Navi" of "Hanasi 6, Haifa, 34323, Israel." Upon information and belief, "GoDaddy.com, LLC" is the name of the domain name registrar to which YTE.COM was transferred without authorization, and is the current registrar for YTE.COM. A copy of the current domain name registration record for yte.com is attached as Exhibit 39.

44.     YYG.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations is currently registered in the name of "liweiliu" of "Xin Gang Xi Lu, guang zhou shi, guang dong 510000, China." Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which

YYG.COM was transferred without authorization, and is the current registrar for YYG.COM. A copy of the current domain name registration record for yyg.com is attached as Exhibit 40.

45.    ZDP.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "xucaijun, Hangzhou Xiaomai Financial Information Service Co., Ltd," of "please contact with 4.cn brokers, hang zhou shi, zhe jiang, 310019, China." Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which ZDP.COM was transferred without authorization, and is the current registrar for ZDP.COM. A copy of the current domain name registration record for zdp.com is attached as Exhibit 41.

46.    ZHD.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "xucaijun, Hangzhou Xiaomai Financial Information Service Co., Ltd," of "please contact with 4.cn brokers, hang zhou shi, zhe jiang, 310019, China." Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which ZHD.COM was transferred without authorization, and is the current registrar for ZHD.COM. A copy of the current domain name registration record for zhd.com is attached as Exhibit 42.

47.    ZULIN,COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "chenyanglong" of "Fuzhoushi, Fuzhoushi, Fugijan, 100084, China." Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which ZULIN.COM was transferred without authorization, and is the current registrar for ZULIN.COM. A copy of the current domain name registration record for zulin.com is

15

attached as Exhibit 43.

48. ZZM.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "wuxizhen" of "wuyidadao, Changshashi, Hunan, 400000, China." Upon information and belief, "EName Technology Co., Ltd." is the name of the domain name registrar to which ZZM.COM was transferred without authorization, and is the current registrar for ZZM.COM. A copy of the current domain name registration record for zzm.com is attached as Exhibit 44.

49. Interested party John Doe 1 is a person or persons of unknown identity located in China that gained unauthorized access to and control of Subject Domain Name 744.COM. The Plaintiff is presently unaware of the true name of John Doe 1. The Plaintiff will amend this Verified Complaint upon discovery of the identities of such fictitious Defendant.

50. Interested party John Doe 2 is a person or persons of unknown identity located in South Korea that gained unauthorized access to and control of Subject Domain Name 028.COM. The Plaintiff is presently unaware of the true name of John Doe 2. The Plaintiff will amend this Verified Complaint upon discovery of the identities of such fictitious Defendant.

51. Interested party John Doe 3 is a person or persons of unknown identity located in Panama that gained unauthorized access to and control of Subject Domain Name 3DCAMERA.COM. The Plaintiff is presently unaware of the true name of John Doe 3. The Plaintiff will amend this Verified Complaint upon discovery of the identities of such fictitious Defendant.

52.    Interested party John Doe 4 is a person or persons of unknown identity located in the Bahamas that gained unauthorized access to and control of Subject Domain Name FNY.COM. The Plaintiff is presently unaware of the true name of John Doe 4. The Plaintiff will amend this Verified Complaint upon discovery of the identities of such fictitious Defendant.

53.    Interested party John Doe 5 is a person or persons of unknown identity located in Israel that gained unauthorized access to and control of Subject Domain Name FX2.COM. The Plaintiff is presently unaware of the true name of John Doe 5. The Plaintiff will amend this Verified Complaint upon discovery of the identities of such fictitious Defendant.

54.    Interested party John Doe 6 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name FXF.COM. The Plaintiff is presently unaware of the true name of John Doe 6. The Plaintiff will amend this Verified Complaint upon discovery of the identities of such fictitious Defendant.

55.    Interested party John Doe 7 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name JTZ.COM. The Plaintiff is presently unaware of the true name of John Doe 7. The Plaintiff will amend this Verified Complaint upon discovery of the identities of such fictitious Defendant.

56.    Interested party John Doe 8 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name KGJ.COM. The Plaintiff is presently unaware of the true name of John Doe 8. The Plaintiff will amend this Verified Complaint upon discovery of the identities of such fictitious

Defendant.

57.     Interested party John Doe 9 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name KMQ.COM. The Plaintiff is presently unaware of the true name of John Doe 9. The Plaintiff will amend this Verified Complaint upon discovery of the identities of such fictitious Defendant.

58.     Interested party John Doe 10 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name KOU.COM. The Plaintiff is presently unaware of the true name of John Doe 10. The Plaintiff will amend this Verified Complaint upon discovery of the identities of such fictitious Defendant.

59.     Interested party John Doe 11 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name KXQ.COM. The Plaintiff is presently unaware of the true name of John Doe 11. The Plaintiff will amend this Verified Complaint upon discovery of the identities of such fictitious Defendant.

60.     Interested party John Doe 12 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name KXW.COM. The Plaintiff is presently unaware of the true name of John Doe 12. The Plaintiff will amend this Verified Complaint upon discovery of the identities of such fictitious Defendant.

61.     Interested party John Doe 13 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name

LNM.COM. The Plaintiff is presently unaware of the true name of John Doe 13. The Plaintiff will amend this Verified Complaint upon discovery of the identities of such fictitious Defendant.

62. Interested party John Doe 14 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name LUOHE.COM. The Plaintiff is presently unaware of the true name of John Doe 14. The Plaintiff will amend this Verified Complaint upon discovery of the identities of such fictitious Defendant.

63. Interested party John Doe 15 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name MEQ.COM. The Plaintiff is presently unaware of the true name of John Doe 15. The Plaintiff will amend this Verified Complaint upon discovery of the identities of such fictitious Defendant.

64. Interested party John Doe 16 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name OCU.COM. The Plaintiff is presently unaware of the true name of John Doe 16. The Plaintiff will amend this Verified Complaint upon discovery of the identities of such fictitious Defendant.

65. Interested party John Doe 17 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name PIXIE.COM. The Plaintiff is presently unaware of the true name of John Doe 17. The Plaintiff will amend this Verified Complaint upon discovery of the identities of such fictitious Defendant.

66.     Interested party John Doe 18 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name QMH.COM. The Plaintiff is presently unaware of the true name of John Doe 18. The Plaintiff will amend this Verified Complaint upon discovery of the identities of such fictitious Defendant.

67.     Interested party John Doe 19 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name RUTEN.COM. The Plaintiff is presently unaware of the true name of John Doe 19. The Plaintiff will amend this Verified Complaint upon discovery of the identities of such fictitious Defendant.

68.     Interested party John Doe 20 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name SDU.COM. The Plaintiff is presently unaware of the true name of John Doe 20. The Plaintiff will amend this Verified Complaint upon discovery of the identities of such fictitious Defendant.

69.     Interested party John Doe 21 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name SQG.COM. The Plaintiff is presently unaware of the true name of John Doe 21. The Plaintiff will amend this Verified Complaint upon discovery of the identities of such fictitious Defendant.

70.     Interested party John Doe 22 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name TAOLV.COM. The Plaintiff is presently unaware of the true name of John Doe 22. The

Plaintiff will amend this Verified Complaint upon discovery of the identities of such fictitious Defendant.

71.    Interested party John Doe 23 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name UHW.COM. The Plaintiff is presently unaware of the true name of John Doe 23. The Plaintiff will amend this Verified Complaint upon discovery of the identities of such fictitious Defendant.

72.    Interested party John Doe 24 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name VCZ.COM. The Plaintiff is presently unaware of the true name of John Doe 24. The Plaintiff will amend this Verified Complaint upon discovery of the identities of such fictitious Defendant.

73.    Interested party John Doe 25 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name VGJ.COM. The Plaintiff is presently unaware of the true name of John Doe 25. The Plaintiff will amend this Verified Complaint upon discovery of the identities of such fictitious Defendant.

74.    Interested party John Doe 26 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name WYD.COM. The Plaintiff is presently unaware of the true name of John Doe 26. The Plaintiff will amend this Verified Complaint upon discovery of the identities of such fictitious Defendant.

75.    Interested party John Doe 27 is a person or persons of unknown identity from an

unknown location that gained unauthorized access to and control of Subject Domain Name XAQ.COM. The Plaintiff is presently unaware of the true name of John Doe 27. The Plaintiff will amend this Verified Complaint upon discovery of the identities of such fictitious Defendant.

76.    Interested party John Doe 28 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name XFF.COM. The Plaintiff is presently unaware of the true name of John Doe 28. The Plaintiff will amend this Verified Complaint upon discovery of the identities of such fictitious Defendant.

77.    Interested party John Doe 29 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name XSG.COM. The Plaintiff is presently unaware of the true name of John Doe 29. The Plaintiff will amend this Verified Complaint upon discovery of the identities of such fictitious Defendant.

78.    Interested party John Doe 30 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name YCX.COM. The Plaintiff is presently unaware of the true name of John Doe 30. The Plaintiff will amend this Verified Complaint upon discovery of the identities of such fictitious Defendant.

79.    Interested party John Doe 31 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name YEY.COM. The Plaintiff is presently unaware of the true name of John Doe 31. The Plaintiff will amend this Verified Complaint upon discovery of the identities of such fictitious

Defendant.

80.    Interested party John Doe 32 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name YGX.COM. The Plaintiff is presently unaware of the true name of John Doe 32. The Plaintiff will amend this Verified Complaint upon discovery of the identities of such fictitious Defendant.

81.    Interested party John Doe 33 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name YJR.COM. The Plaintiff is presently unaware of the true name of John Doe 33. The Plaintiff will amend this Verified Complaint upon discovery of the identities of such fictitious Defendant.

82.    Interested party John Doe 34 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name YJX.COM. The Plaintiff is presently unaware of the true name of John Doe 34. The Plaintiff will amend this Verified Complaint upon discovery of the identities of such fictitious Defendant.

83.    Interested party John Doe 35 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name YYLZ.COM. The Plaintiff is presently unaware of the true name of John Doe 35. The Plaintiff will amend this Verified Complaint upon discovery of the identities of such fictitious Defendant.

84.    Interested party John Doe 36 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name

23

YQP.COM. The Plaintiff is presently unaware of the true name of John Doe 36. The Plaintiff will amend this Verified Complaint upon discovery of the identities of such fictitious Defendant.

85.     Interested party John Doe 37 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name YQT.COM. The Plaintiff is presently unaware of the true name of John Doe 37. The Plaintiff will amend this Verified Complaint upon discovery of the identities of such fictitious Defendant.

86.     Interested party John Doe 38 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name YRN.COM. The Plaintiff is presently unaware of the true name of John Doe 38. The Plaintiff will amend this Verified Complaint upon discovery of the identities of such fictitious Defendant.

87.     Interested party John Doe 39 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name YTE.COM. The Plaintiff is presently unaware of the true name of John Doe 39. The Plaintiff will amend this Verified Complaint upon discovery of the identities of such fictitious Defendant.

88.     Interested party John Doe 40 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name YYG.COM. The Plaintiff is presently unaware of the true name of John Doe 40. The Plaintiff will amend this Verified Complaint upon discovery of the identities of such fictitious Defendant.

89.     Interested party John Doe 41 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name ZDP.COM. The Plaintiff is presently unaware of the true name of John Doe 41. The Plaintiff will amend this Verified Complaint upon discovery of the identities of such fictitious Defendant.

90.     Interested party John Doe 42 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name ZHD.COM. The Plaintiff is presently unaware of the true name of John Doe 42. The Plaintiff will amend this Verified Complaint upon discovery of the identities of such fictitious Defendant.

91.     Interested party John Doe 43 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name ZULIN.COM. The Plaintiff is presently unaware of the true name of John Doe 43. The Plaintiff will amend this Verified Complaint upon discovery of the identities of such fictitious Defendant.

92.     Interested party John Doe 44 is a person or persons of unknown identity from an unknown location that gained unauthorized access to and control of Subject Domain Name ZZM.COM. The Plaintiff is presently unaware of the true name of John Doe 44. The Plaintiff will amend this Verified Complaint upon discovery of the identities of such fictitious Defendant.

93.     Upon information and belief, based upon the Plaintiff's research and due diligence, most if not all of the addresses presently listed in the domain name registration

records for the Defendant domain names are fictitious and do not identify actual addresses.

94.     Upon information and belief, based upon the Plaintiff's research and due diligence, most, if not all, of the names presently listed as the registrants of the Subject Domain Names are fictitious names.

## JURISDICTION, VENUE AND JOINDER

95.     This action arises out of John Does 1-44's violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d).

96.     This Court has original jurisdiction under 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331 and 1338(a), supplemental jurisdiction under 28 U.S.C. § 1367, and *in rem* jurisdiction over the Defendant domain names pursuant to 15 U.S.C. § 1125(d)(2)(A) and 28 U.S.C. § 1655.

97.     This Court further has original jurisdiction under 28 U.S.C. § 1332, as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

98.     Venue is proper in this District pursuant to 15 U.S.C. § 1125(d)(2)(C) in that the .COM domain name registry, VeriSign, Inc., is situated in this jurisdictional district and the Subject Domain Names are all .COM domain names that are located in the district.

99.     Upon information and belief, most if not all of the names identified as the current registrants of the Subject Domain Names are fictitious, most if not all of the addresses identified in the domain name registrations are fictitious, and John Does 1-44 are located outside of the United States and are not amenable to in personam jurisdiction in in the United States. Accordingly, the Plaintiff through due diligence was not able to find a person(s) who would have been a defendant in this action and

*in rem* jurisdiction over the Subject Domain Names is proper pursuant to 15 U.S.C. § 1125(d)(2)(A)(i)(I).

100.    The Plaintiff is providing notice, concurrently with the filing of this complaint, to the Defendants of its intent to proceed *in rem* pursuant to 15 U.S.C. § 1125(d)(2)(A)(i)(II)(aa).

101.    Joinder of the Defendants and Subject Domain Names is proper under Fed. R. Civ. P. 20(a)(2) in that the claims set forth herein arise out of the same series of transactions and the same questions of law are common to all of the Defendants and Subject Domain Names.

### THE PLAINTIFF'S RIGHTS

102.    Baron, either for himself or on behalf of Ondova, originally registered the Subject Domain Names at various times in or around 2001 and 2004 prior to the interests in such domain names being assigned to Novo Point.

103.    By 2010 the interests and goodwill to the Subject Domain Names was assigned to Novo Point, an e-commerce company that provides services and products to consumers through a network of Internet domain names and associated websites.

104.    Novo Point uses, and its predecessors-in-interest used, Internet domain names and e-commerce websites to advertise products for others such as furniture, watches, shoes, computers, groceries, antiques, and eyewear. Novo Point also uses it Internet domain names and e-commerce websites to provide a wide range of useful information, links to other sites, and other online services in the fields of sports, travel, shopping, politics, retail services, and videos. Novo Point, and its predecessors-in-interest, had used the Subject Domain Names in commerce for over 13 years, and had common law rights in the subject marks which,

with the associated goodwill, were assigned to the Plaintiff.

105. Baron often chose, and Novo Point and its predecessors-in-interest often uses and/or used three-letter and three-number domain names as initialisms and acronyms for its products and services, and as the trademark names of its websites, because such letter and number strings are the subject of frequent Internet searches by consumers and are therefore valuable as e-commerce site names.

106. On or about December 24, 2015, Novo Point assigned the Subject Domain Names, and their associated trademarks and goodwill, to the Plaintiff. Included in the assignment was the right for the Plaintiff to sue and to recover possession of the Domain Names and recover damages for past, present and future infringements, dilution, misuse, misappropriation and other violations.

107. Novo Point was the named registrant of the 028.com domain name and used the 028.com domain name to provide visitors with useful information, links to other sites, and/or other online services until the improper transfer of the domain name in 2012.

108. Novo Point used the 744.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view 744.COM as a symbol of origin, and consumers came to identify 744.COM as a source indicator.

109. Novo Point used the 744.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the 744.COM domain name.

110. John Doe 1's misuse of the 744.COM domain name further demonstrates that

the 744.COM mark is entitled to trademark protection.

111.    Novo Point used the 028.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view 028.COM as a symbol of origin, and consumers came to identify 028.COM as a source indicator.

112.    Novo Point used the 028.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the 028.COM domain name.

113.    John Doe 2's misuse of the 028.COM domain name further demonstrates that the 028.COM mark is entitled to trademark protection.

114.    Novo Point used the 3 DCAMERA.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view 3 DCAMERA.COM as a symbol of origin, and consumers came to identify 3 DCAMERA.COM as a source indicator.

115.    Novo Point used the 3 DCAMERA.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the 3 DCAMERA.COM domain name.

116.    John Doe 3's misuse of the 3 DCAMERA.COM domain name further demonstrates that the 3 DCAMERA.COM mark is entitled to trademark protection.

117.    Novo Point used the F N Y .COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a

visual impression that viewers would view FN Y .COM as a symbol of origin, and consumers came to identify FN Y .COM as a source indicator.

118.    Novo Point used the FNY.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the FNY.COM domain name.

119.    John Doe 4's misuse of the FNY.COM domain name further demonstrates that the FNY.COM mark is entitled to trademark protection.

120.    Novo Point used the FX2.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view FX2.COM as a symbol of origin, and consumers came to identify FX2.COM as a source indicator.

121.    Novo Point used the FX2.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the FX2.COM domain name.

122.    John Doe 5's misuse of the FX2.COM domain name further demonstrates that the FX2.COM mark is entitled to trademark protection.

123.    Novo Point used the FXF.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view FXF.COM as a symbol of origin, and consumers came to identify FXF.COM as a source indicator.

124.    Novo Point used the FXF.COM domain name in U.S. Commerce in

association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the FXF.COM domain name.

125.    John Doe 6's misuse of the FXF.COM domain name further demonstrates that the FXF.COM mark is entitled to trademark protection.

126.    Novo Point used the JTZ.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view JTZ.COM as a symbol of origin, and consumers came to identify JTZ.COM as a source indicator.

127.    Novo Point used the JTZ.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the JTZ.COM domain name.

128.    John Doe 7's misuse of the JTZ.COM domain name further demonstrates that the JTZ.COM mark is entitled to trademark protection.

129.    Novo Point used the KGJ.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view KGJ.COM as a symbol of origin, and consumers came to identify KGJ.COM as a source indicator.

130.    Novo Point used the KGJ.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the KGJ.COM domain name.

131.    John Doe 8's misuse of the KGJ.COM domain name further demonstrates that the KGJ.COM mark is entitled to trademark protection.

132.    Novo Point used the KMQ.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view KMQ.COM as a symbol of origin, and consumers came to identify KMQ.COM as a source indicator.

133.    Novo Point used the KMQ.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the KMQ.COM domain name.

134.    John Doe 9's misuse of the KMQ.COM domain name further demonstrates that the KMQ.COM mark is entitled to trademark protection.

135.    Novo Point used the KOU.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view KOU.COM as a symbol of origin, and consumers came to identify KOU.COM as a source indicator.

136.    Novo Point used the KOU.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the KOU.COM domain name.

137.    John Doe 10's misuse of the KOU.COM domain name further demonstrates that the KOU.COM mark is entitled to trademark protection.

138.    Novo Point used the KXQ.COM domain name as more than an Internet

address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view KXQ.COM as a symbol of origin, and consumers came to identify KXQ.COM as a source indicator.

139.    Novo Point used the KXQ.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the KXQ.COM domain name.

140.    John Doe 11's misuse of the KXQ.COM domain name further demonstrates that the KXQ.COM mark is entitled to trademark protection.

141.    Novo Point used the KXW.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view KXW.COM as a symbol of origin, and consumers came to identify KXW.COM as a source indicator.

142.    Novo Point used the KXW.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the KXW.COM domain name.

143.    John Doe 12's misuse of the KXW.COM domain name further demonstrates that the KXW.COM mark is entitled to trademark protection.

144.    Novo Point used the LNM.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view LNM.COM as a symbol of origin, and consumers came to identify LNM.COM as a source indicator.

145.     Novo Point used the LNM.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the LNM.COM domain name.

146.     John Doe 13's misuse of the LNM.COM domain name further demonstrates that the LNM.COM mark is entitled to trademark protection.

147.     Novo Point used the LUOHE.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view LUOHE.COM as a symbol of origin, and consumers came to identify LUOHE.COM as a source indicator.

148.     Novo Point used the LUOHE.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the LUOHE.COM domain name.

149.     John Doe 14's misuse of the LUOHE.COM domain name further demonstrates that the LUOHE.COM mark is entitled to trademark protection.

150.     Novo Point used the MEQ.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view MEQ.COM as a symbol of origin, and consumers came to identify MEQ.COM as a source indicator.

151.     Novo Point used the MEQ.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark

protection in the MEQ.COM domain name.

152. John Doe 15's misuse of the MEQ.COM domain name further demonstrates that the MEQ.COM mark is entitled to trademark protection.

153. Novo Point used the OCU.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view OCU.COM as a symbol of origin, and consumers came to identify OCU.COM as a source indicator.

154. Novo Point used the OCU.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the OCU.COM domain name.

155. John Doe 16's misuse of the OCU.COM domain name further demonstrates that the OCU.COM mark is entitled to trademark protection.

156. Novo Point used the PIXIE.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view PIXIE.COM as a symbol of origin, and consumers came to identify PIXIE.COM as a source indicator.

157. Novo Point used the PIXIE.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the PIXIE.COM domain name.

158. John Doe 17's misuse of the PIXIE.COM domain name further demonstrates that the PIXIE.COM mark is entitled to trademark protection.

159.     Novo Point used the QMH.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view QMH.COM as a symbol of origin, and consumers came to identify QMH.COM as a source indicator.

160.     Novo Point used the QMH.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the QMH.COM domain name.

161.     John Doe 18's misuse of the QMH.COM domain name further demonstrates that the QMH.COM mark is entitled to trademark protection.

162.     Novo Point used the RUTEN.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view RUTEN.COM as a symbol of origin, and consumers came to identify RUTEN.COM as a source indicator.

163.     Novo Point used the RUTEN.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the RUTEN.COM domain name.

164.     John Doe 19's misuse of the RUTEN.COM domain name further demonstrates that the RUTEN.COM mark is entitled to trademark protection.

165.     Novo Point used the SDU.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view SDU.COM as a symbol of origin, and consumers

came to identify SDU.COM as a source indicator.

166.    Novo Point used the SDU.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the SDU.COM domain name.

167.    John Doe 20's misuse of the SDU.COM domain name further demonstrates that the SDU.COM mark is entitled to trademark protection.

168.    Novo Point used the SQG.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view SQG.COM as a symbol of origin, and consumers came to identify SQG.COM as a source indicator.

169.    Novo Point used the SQG.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the SQG.COM domain name.

170.    John Doe 21's misuse of the SQG.COM domain name further demonstrates that the SQG.COM mark is entitled to trademark protection.

171.    Novo Point used the TAOLV.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view TAOLV.COM as a symbol of origin, and consumers came to identify TAOLV.COM as a source indicator.

172.    Novo Point used the TAOLV.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled

to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the TAOLV.COM domain name.

173. John Doe 22's misuse of the TAOLV.COM domain name further demonstrates that the TAOLV.COM mark is entitled to trademark protection.

174. Novo Point used the UHW.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view UHW.COM as a symbol of origin, and consumers came to identify UHW.COM as a source indicator.

175. Novo Point used the UHW.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the UHW.COM domain name.

176. John Doe 23's misuse of the UHW.COM domain name further demonstrates that the UHW.COM mark is entitled to trademark protection.

177. Novo Point used the VCZ.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view VCZ.COM as a symbol of origin, and consumers came to identify VCZ.COM as a source indicator.

178. Novo Point used the VCZ.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the VCZ.COM domain name.

179. John Doe 24's misuse of the VCZ.COM domain name further demonstrates

that the VCZ.COM mark is entitled to trademark protection.

180.    Novo Point used the VGJ.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view VGJ.COM as a symbol of origin, and consumers came to identify VGJ.COM as a source indicator.

181.    Novo Point used the VGJ.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the VGJ.COM domain name.

182.    John Doe 25's misuse of the VGJ.COM domain name further demonstrates that the VGJ.COM mark is entitled to trademark protection.

183.    Novo Point used the WYD.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view WYD.COM as a symbol of origin, and consumers came to identify WYD.COM as a source indicator.

184.    Novo Point used the WYD.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the WYD.COM domain name.

185.    John Doe 26's misuse of the WYD.COM domain name further demonstrates that the WYD.COM mark is entitled to trademark protection.

186.    Novo Point used the XAQ.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a

visual impression that viewers would view XAQ.COM as a symbol of origin, and consumers came to identify XAQ.COM as a source indicator.

187. Novo Point used the XAQ.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the XAQ.COM domain name.

188. John Doe 27's misuse of the XAQ.COM domain name further demonstrates that the XAQ.COM mark is entitled to trademark protection.

189. Novo Point used the XFF.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view XFF.COM as a symbol of origin, and consumers came to identify XFF.COM as a source indicator.

190. Novo Point used the XFF.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the XFF.COM domain name.

191. John Doe 28's misuse of the XFF.COM domain name further demonstrates that the XFF.COM mark is entitled to trademark protection.

192. Novo Point used the XSG.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view XSG.COM as a symbol of origin, and consumers came to identify XSG.COM as a source indicator.

193. Novo Point used the XSG.COM domain name in U.S. Commerce in

association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the XSG.COM domain name.

194. John Doe 29's misuse of the XSG.COM domain name further demonstrates that the XSG.COM mark is entitled to trademark protection.

195. Novo Point used the YCX.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view YCX.COM as a symbol of origin, and consumers came to identify YCX.COM as a source indicator.

196. Novo Point used the YCX.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the YCX.COM domain name.

197. John Doe 30's misuse of the YCX.COM domain name further demonstrates that the YCX.COM mark is entitled to trademark protection.

198. Novo Point used the YEY.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view YEY.COM as a symbol of origin, and consumers came to identify YEY.COM as a source indicator.

199. Novo Point used the YEY.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the YEY.COM domain name.

200.    John Doe 31's misuse of the YEY.COM domain name further demonstrates that the YEY.COM mark is entitled to trademark protection.

201.    Novo Point used the YGX.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view YGX.COM as a symbol of origin, and consumers came to identify YGX.COM as a source indicator.

202.    Novo Point used the YGX.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the YGX.COM domain name.

203.    John Doe 32's misuse of the YGX.COM domain name further demonstrates that the YGX.COM mark is entitled to trademark protection.

204.    Novo Point used the YJR.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view YJR.COM as a symbol of origin, and consumers came to identify YJR.COM as a source indicator.

205.    Novo Point used the YJR.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the YJR.COM domain name.

206.    John Doe 33's misuse of the YJR.COM domain name further demonstrates that the YJR.COM mark is entitled to trademark protection.

207.    Novo Point used the YJX.COM domain name as more than an Internet

address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view YJX.COM as a symbol of origin, and consumers came to identify YJX.COM as a source indicator.

208.    Novo Point used the YJX.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the YJX.COM domain name.

209.    John Doe 34's misuse of the YJX.COM domain name further demonstrates that the YJX.COM mark is entitled to trademark protection.

210.    Novo Point used the YLZ.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view YLZ.COM as a symbol of origin, and consumers came to identify YLZ.COM as a source indicator.

211.    Novo Point used the YLZ.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the YLZ.COM domain name.

212.    John Doe 35's misuse of the YLZ.COM domain name further demonstrates that the YLZ.COM mark is entitled to trademark protection.

213.    Novo Point used the YQP.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view YQP.COM as a symbol of origin, and consumers came to identify YQP.COM as a source indicator.

43

214.    Novo Point used the YQP.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the YQP.COM domain name.

215.    John Doe 36's misuse of the YQP.COM domain name further demonstrates that the YQP.COM mark is entitled to trademark protection.

216.    Novo Point used the YQT.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view YQT.COM as a symbol of origin, and consumers came to identify YQT.COM as a source indicator.

217.    Novo Point used the YQT.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the YQT.COM domain name.

218.    John Doe 37's misuse of the YQT.COM domain name further demonstrates that the YQT.COM mark is entitled to trademark protection.

219.    Novo Point used the YRN.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view YRN.COM as a symbol of origin, and consumers came to identify YRN.COM as a source indicator.

220.    Novo Point used the YRN.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark

protection in the YRN.COM domain name.

221.    John Doe 38's misuse of the YRN.COM domain name further demonstrates that the YRN.COM mark is entitled to trademark protection.

222.    Novo Point used the YTE.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view YTE.COM as a symbol of origin, and consumers came to identify YTE.COM as a source indicator.

223.    Novo Point used the YTE.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the YTE.COM domain name.

224.    John Doe 39's misuse of the YTE.COM domain name further demonstrates that the YTE.COM mark is entitled to trademark protection.

225.    Novo Point used the YYG.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view YYG.COM as a symbol of origin, and consumers came to identify YYG.COM as a source indicator.

226.    Novo Point used the YYG.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the YYG.COM domain name.

227.    John Doe 40's misuse of the YYG.COM domain name further demonstrates that the YYG.COM mark is entitled to trademark protection.

228.     Novo Point used the ZDP.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view ZDP.COM as a symbol of origin, and consumers came to identify ZDP.COM as a source indicator.

229.     Novo Point used the ZDP.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the ZDP.COM domain name.

230.     John Doe 41's misuse of the ZDP.COM domain name further demonstrates that the ZDP.COM mark is entitled to trademark protection.

231.     Novo Point used the ZHD.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view ZHD.COM as a symbol of origin, and consumers came to identify ZHD.COM as a source indicator.

232.     Novo Point used the ZHD.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the ZHD.COM domain name.

233.     John Doe 42's misuse of the ZHD.COM domain name further demonstrates that the ZHD.COM mark is entitled to trademark protection.

234.     Novo Point used the ZULIN.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view ZULIN.COM as a symbol of origin, and

consumers came to identify ZULIN.COM as a source indicator.

235. Novo Point used the ZULIN.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the ZULIN.COM domain name.

236. John Doe 43's misuse of the ZULIN.COM domain name further demonstrates that the ZULIN.COM mark is entitled to trademark protection.

237. Novo Point used the ZZM.COM domain name as more than an Internet address. Novo Point used and promoted the domain name in a manner that made such a visual impression that viewers would view ZZM.COM as a symbol of origin, and consumers came to identify ZZM.COM as a source indicator.

238. Novo Point used the ZZM.COM domain name in U.S. Commerce in association with the provision of services to Internet consumers and Novo Point was entitled to, and the Plaintiff, as its successors-in-interest is entitled to, common law trademark protection in the ZZM.COM domain name.

239. John Doe 44's misuse of the ZZM.COM domain name further demonstrates that the ZZM.COM mark is entitled to trademark protection.

## UNLAWFUL TRANSFER AND REGISTRATION OF THE SUBJECT DOMAIN NAMES

240. By 2010 Baron, among others, was involved in a litigation in the United States District Court for the Northern District of Texas regarding domain names. The Subject Domain Names were not the subject of the complaint in that action. Then, in November 2010, the Northern District of Texas improperly placed the Subject Domain Names, and other domain names, under the control of a receivership. The United States Court of Appeal for the Fifth

Circuit ultimately issued an opinion and order on December 18, 2012 holding that the District Court lacked subject matter jurisdiction to enter the receivership and the order appointing the receivership was vacated. The Fifth Circuit's opinion further required the Northern District of Texas to wind-down the receivership. The Fifth Circuit issued its mandate on this opinion and order on April 19, 2013.

241.     From about February 2011 to at least May 2012, while the appeal to the Fifth Circuit was pending but prior to the receivership being reversed and vacated by the Fifth Circuit, the Northern District of Texas issued several orders permitting the receivership to sell at least some of the Subject Domain Names (the "Improper Receivership Sale Orders"). Baron and Novo Point were not informed which domain names were included or contemplated by any of the Improper Receivership Sale Orders, when they were sold or to whom they were sold at the time of any of the sales. As a result of the Improper Receivership Sale Orders, each of the Subject Domain Names were sold by the receivership, without the authorization of Baron or Novo Point (the "Transfers of Control").

242.     The Fifth Circuit issued mandates in or about April 2013, reversing the Improper Receivership Sale Orders, based on its ruling that the receivership was improper, the Northern District of Texas lacked subject matter jurisdiction to order the receivership, and reversing and vacating the receivership.

243.     Although the Fifth Circuits' mandates were issued in or about April, 2013, the District Court did not wind-down and terminate the receivership until March 2015.

244.     On information and belief, based upon the due diligence research of the Plaintiff, the Transfers of Control were enabled by Damon Nelson ("Nelson"), an individual appointed by the Northern District of Texas to assist the receivership in valuing and managing Baron's and

48

Novo Point's domain name portfolio and appointed Nelson as "the permanent Manager" of Novo Point after a motion by the receivership to do so.   Neither Baron nor Novo Point ever gave, offered, or otherwise permitted Nelson to act with authority to effect the sale or transfer of any of Baron's or Novo Point's domain names, including the Subject Domain Names.  Novo Point never consented to the appointment of Nelson as "Permanent Manager."

245.    Upon information and belief one or more unknown individuals or entities (the "Transferees") solicited Nelson, will full knowledge of Baron's and/or Novo Point's ownership of and trademark rights in the Subject Domain Names and with full knowledge of Nelson's lack of authority.

246.    Upon information and belief the Transferees were aware of Baron's and Novo Point's claims to ownership of the Subject Domain Names and that Baron and Novo Point had appealed the seizure of the domain names, based on the court's lack of jurisdiction over those assets, and that an appeal had been pending for nearly two years and would be determined at any moment.

247.    Upon information and belief the Transfers of Control were made without any purported transfer of goodwill or trademark rights, with an express disclaimer of any warranties, and with the Transferees' knowledge of a) Baron's and/or Novo Point's superior rights in the Subject Domain Names; b) the likely lack of authority for transfer of any rights concerning the Subject Domain Names; c) the appeal pending at the time of the Transfers of Control; 4) the fact that a reversal by the Fifth Circuit Court of Appeals would likely render any transfer void; and 5) the expectation that Baron and Novo Point would initiate legal action against the transferees to reclaim their property.

248.    Upon information and belief the Transferees requested that they receive

representations and warranties from Nelson regarding the title of the Subject Domain Names and indemnification from claims of Baron and Novo Point and that Nelson refused to provide same.

249.     Upon information and belief, the consideration given to Nelson, and ultimately placed into back accounts under the control of the receivership, for the Transfers of Control was less than 1 % of the value of the Subject Domain Names.

250.     On November 9, 2012, the Fifth Circuit enjoined the closing of any sales of Baron and Novo Point's domain names prior to November 30, 2012.

251.     Upon information and belief, when the Transferees obtained possession and control of the Subject Domain Names, it changed the registrant information and the technical settings for the domain names were changed thereby disabling Novo Point's associated e-commerce websites.

252.     Upon information and belief, the Transferees offered the Subject Domain Names for sale.

253.     The registration and use of the Subject Domain Names by the Transferees and/or the Defendants is without authorization from Baron, Novo Point or the Plaintiff.

254.     The Subject Domain Names do not reflect the trademark or intellectual property rights of the Defendants.

255.     Upon information and belief and based upon the Plaintiff's due diligence, the Subject Domain Names do not reflect the legal name of the current registrant(s) of the domain names.

256.     Upon information and belief most, if not all, of the current registrants of the Subject Domain Names have not engaged in bona fide noncommercial or fair use of Baron's, Novo Points' or the Plaintiff's trademarks in a website accessible under the Subject Domain

Names.

257.     Upon information and belief the Transferees and some, if not all, of the Defendants who currently control the Subject Domain Names offered or are offing to sell the Subject Domain Names to third parties for financial gain without having used, or having an intent to use, the domain names in the bona fide offering of any goods or services. Many of the web pages displayed at the Subject Domain Names advertise the domain names for sale.

258.     The registrants provided material and misleading false contact information in the domain name registrations when changing the registrant for the Subject Domain Names from Novo Point to the current registrant(s).

259.     The Transferees and the Defendants transferred the Subject Domain Names without authorization from Baron, Novo Point or the Plaintiff and thereby registered multiple domain names which assignee knew were identical to, and reflective of, Novo Point's, and the Plaintiff's, trademarks.

## FIRST CLAIM FOR RELIEF

### Violation of the Federal Anticybersquatting Consumer Protection Act

260.     The Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs 1-259, as though fully set forth herein.

261.     The Plaintiff's trademarks are famous and/or distinctive and were famous and/or distinctive prior to the time that control of the Subject Domain Names was transferred away from the Plaintiff's predecessor-in-interest, Novo Point, without authorization, to the Transferees.

262.     The Plaintiff's trademarks are famous and/or distinctive and were famous and/or distinctive prior to the time that the Defendants John Does 1-44 transferred the Subject Domain

Names aware from the Plaintiff or Novo Point without authorization and thereby registered the Subject Domain Names.

263.     The aforesaid acts by Transferees constitute registration, trafficking, or use of domain names that are identical to the Plaintiff's trademarks, with bad faith intent to profit therefrom.

264.     The aforesaid acts by the Defendants John Does 1-44 constitute registration, trafficking, or use of domain names that are identical to the Plaintiff's trademarks, with bad faith intent to profit therefrom.

265.     The Plaintiff, despite its due diligence, has been unable to find a person who would have been a defendant in a civil action under 15 U.S.C. § 1 125(d)(2)(A)(i)(I).

266.     The aforesaid acts by the registrant(s) of the domain names constitute unlawful cyberpiracy in violation of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(I).

267.     The aforesaid acts have caused, and are causing, great and irreparable harm to the Plaintiff and the public. Unless permanently restrained and enjoined by this Court, said irreparable harm will continue. Thus, pursuant to 15 U.S.C. § 1125(d)(2)(D)(i), the Plaintiff is entitled to an order transferring the Subject Domain Name registrations to the Plaintiff.

## SECOND CLAIM FOR RELIEF

### Quiet Title

268.     The Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs 1-267, as though fully set forth herein.

269.     The Plaintiff has valid legal and equitable title to the Subject Domain Names.

270.     The Plaintiff's title to the Subject Domain Names is superior to any claim of

title by the John Does 1-44.

271.    Through their control of the Subject Domain Names, John Does 1-44 have asserted a claim that constitutes a cloud on the Plaintiff's title.

272.    The Plaintiff's good title to the Subject Domain Names should not be subjected to various futures claims against that title.

### THIRD CLAIM FOR RELIEF

#### Conversion

273.    The Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs 1-272, as though fully set forth herein.

274.    The Plaintiff has property rights in and is the owner of the Subject Domain Names.

275.    The Defendants have taken control of the Subject Domain Names and are wrongfully exercising control and authority over the Subject Domain Names.

276.    The control and authority exercised by the Defendants deprives the Plaintiff of control and the income and business generated from the Subject Domain Names.

277.    The Defendants are wrongfully exerting domino over the Plaintiff's property in denial of the Plaintiff's rights.

### PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests of this Court:

1.    That judgment be entered in favor of the Plaintiff on its claims for violation of the Anticybersquatting Consumer Protection Act and for relief under the laws of quiet title and conversion; and

2.    Enter an order declaring that the Plaintiff, Associated Recovery, LLC, is

the only entity with any rights to ownership of the Subject Domain Names; and

    3.      Enter an order declaring that the Defendants do not have any rights to the Subject Domain Names; and

    4.      Enter an order directing the Subject Domain Names be promptly transferred to the Plaintiff; and

    5.      Enter an order that any other domain names registered by the Defendants of the Subject Domain Names that resemble or include the Plaintiffs' trademarks be transferred to the Plaintiff; and

    6.      Award the Plaintiff his fees and costs, including reasonable attorney fees, in connection with this action pursuant to 15 U.S.C. 1117(a); and

    7.      That the Court grant such other relief to the Plaintiff as the Court deems just and proper.

## VERIFICATION

I declare that I am the Manager of ASSOCIATED RECOVERY, LLC, and am authorized to make this verification. I have read the foregoing VERIFIED COMPLAINT and know the contents thereof. The allegations are true and correct and are based upon my own personal knowledge and existing corporate documents, except for those matters stated to be upon information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury.

December 30, 2015                                    Travis Brown

Respectfully submitted,

31 December 2015
_____
Date

Rebecca J. Stempien Coyle (VSB 71,483)
Attorney for Associated Recovery, LLC
LEVY & GRANDINETTI
1120 Connecticut Avenue, N.W., Suite 304
Washington, D.C. 20036
Telephone (202) 429-4560
Facsimile (202) 429-4564
mail@levygrandinetti.com