IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | | |
|---|---|---|
| ASSOCIATED RECOVERY, LLC, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No. 1:15-cv-01723-AJT-JFA |
| | ) | |
| JOHN DOES 1-44, | ) | |
| | ) | |
| *Defendants in rem*. | ) | |

## DEFENDANT'S MEMORANDUM IN SUPPORT OF
## MOTION TO SET ASIDE DEFAULT JUDGMENT

Shenzhen Jia Tai Zhe Technology Company ("JTZ") and Defendant JTZ.com, pursuant to Federal Rule of Civil Procedure 60(b), submit this Memorandum in Support of Motion to Set Aside the Entry of Default obtained by Plaintiff Associated Recovery, Inc.  JTZ is the holder in interest of JTZ.com, one of the domain names against which Plaintiff has brought this *in rem* action.

## I.  STATEMENT OF FACTS

### A.    The Texas Litigation.

This dispute is related to litigation in the Northern District of Texas styled *Netsphere, Inc. v. Baron*, No. 3:09-CV-0988-F (N.D. Tex.) (the "Texas Litigation").[1]  This Court previously granted the undersigned counsel's motion to transfer a portion of this case related to twenty-eight

---

[1]Much of the procedural history has been discussed in decisions by the Northern District of Texas and the Fifth Circuit.  Summaries of the procedural history by the Northern District and the Fifth Circuit can be found in the following orders and opinions:  *Netsphere, Inc. v. Baron* ("*Netsphere I*"), 703 F.3d 296, 302 (5th Cir. 2012); *Netsphere, Inc. v. Baron* ("*Netsphere II*"), No. 3:09-CV-0988-F, 2013 WL 3327858, at *1 (N.D. Tex. May 29, 2013); *In re Baron*, No. 12-37921-SGJ-7, 2013 WL 3233518 (Bankr. N.D. Tex. June 26, 2013), *rev'd sub nom. Baron v. Schurig*, No. 3:13-cv-3461-L, 2014 WL 25519 (N.D. Tex. Jan. 2, 2014), *aff'd in part, rev'd in part, sub nom. In re Baron*, 593 F. App'x 356 (5th Cir. 2014).

1

domain names to the Northern District of Texas.  (*See* ECF 40.)  The Texas litigation arose from a business dispute between Jeffrey Baron, Plaintiff's alleged predecessor in interest, and his business partner.  In the Texas Litigation, the Texas court found that Baron repeatedly engaged in vexatious and abusive litigation conduct.  *See Netsphere I*, 703 F.3d at 302.  In response to that conduct, the Northern District of Texas appointed Peter S. Vogel ("Vogel" or "Receiver") as the receiver for companies controlled by Baron.  *See* Order Appointing Receiver, *Netsphere, Inc. v. Baron* , No. 3:09-CV-0988-F (N.D. Tex. Nov. 24, 2010), ECF No. 130.

In response to Baron's continuing misconduct, the Northern District of Texas granted a motion by the Receiver to permit the sale of domain names owned by Baron's businesses, including Novo Point, LLC ("Novo Point") for the purpose of paying Novo Point's creditors. *See* February 4, 2011 Order Granting the Receiver's Omnibus Motion to Permit Sales of Domain Names, *Netsphere, Inc. v. Baron*, No. 3:09-CV-0988-F (N.D. Tex. Feb. 4, 2011), ECF No. 288. The Northern District further granted the Receiver's motion to appoint Damon Nelson ("Nelson") as permanent manager of Novo Point to assist the Receiver in selling Novo Point's domain names.[2]  *See* Order Granting the Receiver's Motion to Appoint Damon Nelson as Permanent Manager of the LLCs and For Turnover of LLC Materials to Damon Nelson,

---

[2]Baron appealed the receivership order, as well as subsequent orders entered by the Northern District of Texas.  Ultimately, the Fifth Circuit reversed the appointment of the receiver with directions to vacate the receivership.  *Netsphere I*, 703 F.3d at 305.  Normally when a receivership is improper, the party that sought the receivership is accountable for the receivership fees and expenses.  *Id.* at 312.  But, because the Fifth Circuit found that "the record supports that the circumstances that led to the appointment of a receiver were primarily of Baron's own making," the Fifth Circuit found that it was equitable to charge "the current receivership fund for reasonable receivership expenses."  *Id.* at 313.

*Netsphere, Inc. v. Baron*, No. 3:09-CV-0988-F (N.D. Tex. Apr. 22, 2011), ECF No. 473.  Mr. Nelson thus worked under the direction of the Receiver.[3]

Although the Northern District of Texas eventually terminated the receivership, the court explicitly "retain[ed] exclusive jurisdiction . . . over any disputes that may arise concerning . . . any controversy that arises from or relates to the Receivership or actions of the Receiver or his professionals." *Netsphere, Inc. v. Baron*, No. 3:09-CV-0988-F (N.D. Tex. March 27, 2015), ECF No. 1447 at 21.  *See also Baron v. Vogel*, No. 3:15-CV-232-L, 2016 WL 1273465, at *3 (N.D. Tex. Mar. 31, 2016) (noting that Northern District of Texas retains exclusive jurisdiction "over any disputes that might arise . . . from or relate[ ] to the receivership or actions of the receiver or his professionals.").

### B.      JTZ Purchases JTZ.com and Registers the JTZ Mark.

Pursuant to the Northern District of Texas's order authorizing the sale of Novo Point's domain names, Nelson sold the domain names that are the subject of this litigation, including JTZ.com, in 2012.  (*See* ECF 1 ¶ 241.)  The seller of the domain names in the agreements was Novopoint, LLC [sic], and Nelson authorized the sale and signing on behalf of Novo Point.  *Id.* Plaintiff filed this lawsuit attempting to unwind this sale.  (*See* ECF 1 ¶¶ 240-41.)

On September 3, 2012, JTZ purchased the JTZ.com domain name using the website Taoboa.com.  (*See* Declaration of Chang Su ("Su Decl.") at ¶ 3, attached hereto as Exhibit A.) JTZ gave value for JTZ.com and the seller caused the domain name to be transferred to JTZ's registrant, GoDaddy.com.  (*See id.* at ¶ 4.)  Defendant immediately provided accurate registrant

---

[3]Recently, the Northern District of Texas granted a 12(b) motion to dismiss in a related case brought by Baron and Novo Point challenging the propriety of the Receiver.  *See Baron v. Vogel*, No. 3:15-cv-232-L, 2016 WL 1273465 (N.D. Tex. Mar. 31, 2016).  In that order, the court found that "any claim by Plaintiffs based on the wrongful establishment or continuation of the receivership or payment of receivership expenses is an impermissible collateral attack of prior orders through this suit." *Id.* at *6.

contact information to GoDaddy.com, listing JTZ's owner, Mr. Chang Su, as the registrant.  (*See id.* at ¶ 5; WhoIs.com lookup record for JTZ.com, attached hereto as Exhibit B.)

Upon acquiring the JTZ.com domain, JTZ immediately began using JTZ.com to market and sell photography equipment.  (*See id.* at ¶ 6.)  Since obtaining the JTZ.com domain in 2012, JTZ has used the JTZ trademark consistently in the United States, including by marketing photography equipment on the JTZ.com website.  (*See id.* at ¶ 7; JTZ Trademark Application Statement of Use, attached hereto as Exhibit C.)  Plaintiff admits that it has not used the JTZ mark since 2012.  (ECF 1 ¶ 3.)

Moreover, on January 7, 2015, JTZ filed a trademark application for the JTZ mark.  (*See* Su Decl. at ¶ 8; JTZ Trademark Application, attached hereto as Exhibit D.)  No opposition to JTZ's application was filed.  On March 29, 2016, the United States Patent and Trademark Office approved JTZ's trademark application.  (*See id.* at ¶ 8; United States Patent and Trademark Office Trademark Registration for JTZ, attached hereto as Exhibit E.)

**C.**     **Service of Complaint.**

On December 31, 2015, Plaintiff filed this *in rem* action against various John Doe Defendants and domain names, alleging a violation of the Federal Anticybersquatting Consumer Protection Act ("ACPA") and other claims.  (*See* ECF 1.)  On January 20, 2016, Plaintiff filed a Motion for an Order to Publish Notice of Action.  (*See* ECF 3; ECF 4.)  In its Memorandum in support of that motion, Plaintiff alleged to have sent the notices "to the postal and e-mail addresses set forth in the registrations for the Domain Names."  (ECF 4 at 4.)  The Declaration in support of the motion further clarified that Plaintiff had sent copies of the Complaint "to each of the defendants via e-mail, using the e-mail addresses provided on the Whois records for each of the Internet domain names at issue," and further directed a letter to be sent "to each postal and e-mail addresses set forth in the registrations for the Domain Names" on December 31, 2015.

4

(ECF 4-1 ¶ 4.)  Neither Plaintiff's Memorandum nor Declaration, however, include a certificate of service related to sending the Complaint.  Nor does Plaintiff identify the specific addresses to which it allegedly sent the Complaint.  Rather, the Memorandum attaches only "representative copies" of the notices, which relate to just two of the domain names at issue.  (*Id.* at Composite Attachment 1 and Attachment 2.)

On January 27, 2016, this Court issued an Order to Publish Notice of Action and directed that a copy of the order be published in *The Washington Times* "within fourteen (14) days after entry of this Order."  (ECF 6, ¶ 1.)  The Court further ordered that "[a]ny answer or other response to the Complaint should be filed . . . within twenty-one (21) days from the date of publication of this Order in The Washington Times."  (ECF 6, ¶ 2(C).)  Plaintiff advised the Court that it published the Court's order in *The Washington Times* on February 3, 2016.  (*See* ECF 7; ECF 7-1.)

Although JTZ's owner, Mr. Su, received an email related to this action, he did not understand that this lawsuit threatened JTZ's ownership interest in JTZ.com, in part because Mr. Su, whose primary language in Chinese, has difficulty reading English.  (Su Decl. at ¶ 9.)  Mr. Su believed that the email was junk mail, as JTZ had purchased the JTZ.com domain name four years earlier and had no reason to believe there was any basis to challenge its ownership of the domain name.  (*Id.*)

**D.    <u>Entry of Default.</u>**

On February 25, 2016, Plaintiff sought an entry of default against certain domain names, including JTZ.com.  (ECF  9.)  The Clerk granted the entry of default on February 26, 2016 (ECF 10), and then granted an amended entry of default on February 29, 2016 (ECF 12).

**E.      Prior Defendants' Motion to Set Aside Default.**

In late April and early March 2016, the domain names yyg.com, yrn.com, vcz.com,

fny.com, zhd.com, and zulin.com, via their corresponding owners Liwei Liu, Dongdong Xu,

Teng Wang, Xiaosheng Liu, and Feng Yan retained the undersigned counsel to set aside the

default entered in this matter.  The undersigned immediately prepared and filed a Motion to Set

Aside Default.  (*See* ECF 13.)  In that motion, Defendants argued that they acted promptly to lift

the default, had a meritorious defense, and that Plaintiff would not be prejudiced by setting aside

the default.  (*See* ECF 14.)  The Magistrate Judge granted Defendants' motion on March 18,

2016, setting aside the default as to domain names yyg.com, yrn.com, vcz.com, fny.com,

zhd.com, and zulin.com.  (*See* ECF 27.)  JTZ.com remained in default because JTZ, the owner of

JTZ.com, was not aware that its interest in the JTZ.com domain was threatened by this action.

(Su Decl. at ¶ 11.)

On March 25, 2016, certain domain names, including yyg.com, yrn.com, vcz.com,

fny.com, zhd.com, and zulin.com, filed a Motion to Dismiss or in the Alternative, to Transfer

Venue.  (*See* ECF 30.)  On April 15, 2016, the Court granted that motion, transferring Plaintiff's

claims against those domain names to the Northern District of Texas.  (*See* ECF 40.)

On May 18, 2016, the Court granted Plaintiff's Motion for Default Judgment against

JTZ.com and other domain name defendants.  (*See* ECF 42.)  The same day, the Court entered a

Default Judgment (the "Judgment").  (*See* ECF 43.)  Defendant understands that on June 8, 2016,

the JTZ.com domain name was transferred to Plaintiff pursuant to the Judgment.  Defendant

understands that Uniregistrar Corp. is the current registrar of JTZ.com.

**F.      Representation of JTZ.com.**

JTZ became aware that this action threatened its rights in the JTZ.com domain name only

after the Judgment had been entered.  (Su Decl. at ¶ 11.)  JTZ immediately sought to retain

counsel in the United States.  (*Id*. at ¶ 13.)  The undersigned thereafter worked diligently to obtain the facts necessary to file this Motion, given JTZ's unfamiliarity with legal proceedings in the United States, language barriers, and time zone differences.  JTZ and Defendant now files this Motion to Set Aside Entry of Default.  Pursuant to Local Civil Rule 7(E), counsel for Defendant met and conferred in good faith with Plaintiff regarding this motion on Thursday June 9, 2016.  Plaintiff stated that it would consider consenting to this Motion, but at the time of filing, Plaintiff has not consented to this Motion to set aside the Judgment.

## II.  ARGUMENT

The court should set aside the judgment under Rule 60(b)(1).  Under that Rule, the Court may relieve a party from a final judgment for "mistake, inadvertence, surprise, or excusable neglect."  Fed. R. Civ. P. 60(b)(1).  "When deciding whether to set aside an entry of default, a district court should consider whether the moving party has a meritorious defense, whether it acts with reasonable promptness, the personal responsibility of the defaulting party, the prejudice to the party, whether there is a history of dilatory action, and the availability of sanctions less drastic."  *Payne ex rel. Estate of Calzada v. Brake*, 439 F.3d 198, 204-05 (4th Cir. 2006); *see also Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 420 (4th Cir. 2010) ("[W]e have analyzed Rule 55(c) and Rule 60(b) motions using the same factors.").  The decision to set aside a judgment under Rule 60 is committed to the discretion of the Court. *Payne*, 439 F.3d at 204.

### A.  Courts Have a Strong Preference to Decide Cases On the Merits.

The Fourth Circuit has "repeatedly expressed a strong preference that, as a general matter, defaults are to be avoided and that claims and defenses be disposed of on their merits." *Saurikit, LLC v. cydia.com*, No. 1:11CV0888 JCC/JFA, 2011 WL 5843638, at \*2 (E.D. Va. Nov. 21, 2011) (quoting *Colleton*, 616 F.3d at 417).  Any doubts about whether relief should be

granted, moreover, should be resolved in favor of setting aside the default so that the case may

be heard on the merits.  *Tolson v. Hodge*, 411 F.2d 123 (4th Cir. 1969) ("It has been held in an

extensive line of decisions that Rules 55(c) and 60(b) are to be liberally construed in order to

provide relief from the onerous consequences of defaults and default judgments.").  "There is

much more reason for liberality in reopening a judgment when the merits of the case never have

been considered than there is when the judgment comes after a full trial on the merits."  Wright

& Miller, § 2857 Discretion of the Court, 11 FED. PRAC. & PROC. CIV. (3d ed.).  Here, the parties

dispute their respective rights and ownership interests in the JTZ mark and the JTZ.com domain

name.  Defendant should have an opportunity to address those issues.  Further, all relevant

factors weigh in favor of setting aside the Judgment.

## B.      Defendant Was Unaware of the Nature of This Action.

Under Rule 60, courts give particular weight to a defendant's lack of notice.  *Marshall v.*

*Boyd*, 658 F.2d 552 (8th Cir. 1981) (failure to give notice is strong factor weighing in favor of

setting aside judgment); *Lutomski v. Panther Valley*, 653 F.2d 270 (6th Cir. 1981) (same);

*Wilson v. Moore*, 564 F.2d 366 (9th Cir. 1977) (same).

Indeed, courts have found that a lack of notice justifies relief from default, even where

the defendant was properly served.  In *Avon Contractors, Inc. v. Sec'y of Labor*, 372 F.3d 171

(3d Cir. 2004), the respondent moved to set aside a default under Rule 60(b).  Although the

respondent had been properly served via certified mail, one of its employees had destroyed the

mail.  The Third Circuit lifted the judgment, reasoning that the respondent's failure to answer

was due to excusable neglect.  *See also Colleton*, 616 F.3d at 420 (although corporation was

properly served by process mailed to its agent designated for acceptance of service of process,

excusable neglect existed where agent mishandled process and defendant did not receive notice

of lawsuit).

Here, although Mr. Su received an email related to this action, he mistakenly believed that it was junk mail.  (Su Decl. at ¶ 9.)  JTZ purchased the JTZ.com domain name for substantial value more than 4 years earlier and had been using the domain name and JTZ mark since that time.  (*Id*. at ¶¶ 3, 6, & 7.)  JTZ had no reason to believe there was any reason to challenge its purchase and ownership of the JTZ.com domain name and continues to believe that to this day.  (*Id*. at ¶ 9.)  Thus, JTZ did not understand that its rights and ownership interest in JTZ.com were threatened by this lawsuit until after the Judgment was entered.  (*Id*. at ¶ 11.)  Defendant was mistaken.  And as in *Avon* and *Colleton*, Defendant's failure to respond was due to excusable neglect.  *See Colleton*, 616 F.3d at 420 (setting aside default for excusable neglect where party was properly served, but agent for service mishandled process); *Avon*, 372 F.2d at 175 (finding excusable neglect under Rule 60(b) where party was properly served, but employee destroyed service of process, reasoning that opposing party would not suffer prejudice from opening default judgment).  For this reason, the Court should set aside the Judgment.

**C.**    **Defendant Promptly Filed This Motion.**

Upon discovering that its ownership interest in JTZ.com was threatened, JTZ immediately sought to retain counsel in the United States and promptly filed this motion to set aside the entry of default, less than four weeks after the Judgment was entered.  (Su Decl. at ¶ 13.)  Defendant has not delayed in responding to this action in bad faith.  Thus, this factor weights in favor of setting aside the Judgment.

**D.**    **Plaintiff Will Not Be Prejudiced By Lifting The Entry of Default.**

In determining whether setting aside the default would prejudice the non-defaulting party, courts consider whether the delay:

(1) made it impossible for the non-defaulting party to present some of its evidence;
(2) made it more difficult for the non-defaulting party to proceed with trial; (3)

9

hampered the non-defaulting party's ability to complete discovery; and (4) was used by the defaulting party to collude or commit a fraud.

*Saurikit*, 2011 WL 5843638, at *5 (citing *Vick v. Wong*, 263 F.R.D. 325, 330 (E.D. Va. 2009)). "In the context of a motion to set aside an entry of default, as in other contexts, delay in and of itself does not constitute prejudice to the opposing party." *Colleton*, 616 F.3d at 418.

Here, Defendant filed this Motion less than four weeks after the Judgment was entered. Plaintiff's ability to present its case and gather evidence has not been prejudiced. *See Avon*, 372 F.2d at 175 (finding excusable neglect under Rule 60(b) where party was properly served, reasoning that opposing party would not suffer prejudice by opening default judgment). Indeed, as discussed above, the Court only recently transferred Plaintiff's claims against other several similarly situated domain names to the Northern District of Texas (*see* ECF 40), where briefing on Defendants' motion to dismiss is ongoing and Plaintiff recently moved for leave to amend its complaint.

By contrast, JTZ will suffer serious injury to his ownership interest in the JTZ mark and JTZ.com domain name if the Court does not set aside the Judgment. Thus, this factor weights in favor of setting aside the Judgment.

### E.     Defendant Has A Meritorious Defense.

"[A]ll that is necessary to establish the existence of a 'meritorious defense' is a presentation or proffer of evidence, which, if believed, would permit either the Court or the jury to find for the defaulting party." *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982); *see also Cent. Operating Co. v. Util. Workers of Am., AFL-CIO*, 491 F.2d 245, 253 (4th Cir. 1974) ("[A] party is not required to establish a meritorious defense by a preponderance of the evidence. The purpose of the motion was only to open the default judgment so that there may be a trial on the merits; he did not seek a judgment in his favor.").

10

1. **Plaintiff Lacks Standing.**

Neither Baron nor Novo Point could bring this suit. Plaintiff is allegedly their assignee.[4] (ECF 1 ¶¶ 3 & 4.) Thus, Plaintiff's claims are likewise barred. "[T]he only injury sufficient to support an assignee's standing to assert an assigned claim is an injury suffered by the assignor, and that injury must satisfy all the requirements of constitutional standing, i.e., the injury suffered must be an injury-in-fact that is causally traceable to a named defendant and likely to be redressed by the court action." *PEMEX Exploracion y Produccion v. Murphy Energy Corp.*, 923 F. Supp. 2d 961, 965 (S.D. Tex. 2013). "[T]he irreducible constitutional minimum of standing contains three elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed. 2d 351 (1992). These elements are "(1) an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent; (2) a causal connection between the injury and the conduct complained of; and (3) the likelihood that a favorable decision will redress the injury." *Croft v. Gov. of Texas*, 562 F.3d 735, 745 (5th Cir. 2009) (citing *Lujan*, 504 U.S. at 560–61, 112 S.Ct. 2130). The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561, 112 S.Ct. 2130.

Plaintiff's allegations lack at least two requisite elements. First, there was no injury in fact. Although the Fifth Circuit vacated the receivership, the sales of domain names to raise funds needed to pay the receivership fees occurred under the court's authority. *See Vogel I*, 2016 WL 1273465 at *5 (finding no *ultra vires* acts by Vogel). Neither the Fifth Circuit nor the

---

[4] Defendant has reason to believe that Baron is directing this litigation through Plaintiff as a collateral attack on the sale of JTZ.com pursuant to the Northern District of Texas's orders. Plaintiff has not denied this allegation. Baron's conduct caused the Northern District of Texas to appoint the Receiver. *See* February 4, 2011 Order Granting the Receiver's Omnibus Motion to Permit Sales of Domain Names, *Netsphere, Inc. v. Baron*, No. 3:09-CV-0988-F (N.D. Tex. Feb. 4, 2011), ECF No. 288. Baron cannot obtain a second bite at the apple by challenging those orders by using Plaintiff as a proxy in this litigation.

Northern District entered any order voiding the sales.  Further, the Northern District of Texas implicitly authorized the sales *post hoc* when it authorized payment of the receivership fees using, in part, funds raised through the sales.  *See generally Netsphere II*, 2013 WL 3327858.

Second, there is no causal connection between the alleged injury and the conduct about which Plaintiff complains.  Assuming, *arguendo*, there were an injury, it was not caused by Defendant, who is a bona fide purchaser for value of JTZ.com.  *See EDS Corp. v. Southwestern Bell Tel.*, 674 F.2d 453, 459 (5th Cir. 1982) ("A bona fide purchaser … is one who buys property in good faith for valuable consideration and without knowledge (actual or imputed) of outstanding claims in a third party or parties.").  Indeed, JTZ.com was transferred pursuant to a contract, signed by Damon Nelson on behalf of Novo Point, without notice or mention of any alleged third-party interests.

Plaintiff's claims under the ACPA, for quiet title, and conversion all flow from Defendant's acquisition and use of domain names that were sold pursuant to the authorization of the Northern District of Texas.  The quiet title and conversion claims are extinguished by that court's orders authorizing the sales and subsequent orders authorizing payments.  As for the ACPA claims, which flow from alleged trademark rights, Defendant's use of JTZ.com was not only foreseeable, it was the very reason for the assignment.  Hence, Defendant enjoys an implied license from Novo Point that defeats any ACPA claim.  *See McCoy v. Misuboshi Cutlery, Inc.*, 67 F.3d 917, 920 (Fed. Cir. 1995) (implied license available even through involuntary sale).  Defendants have not injured Baron, Novo Point, or Plaintiff.  *Id.*  Any alleged injury to Baron or Novo Point (and by assignment, Plaintiff) was self-inflicted.  *See Netsphere I*, 703 F.3d at 313 ("the record supports that the circumstances that led to the appointment of a receiver were primarily of Baron's own making").

With only Baron and Novo Point to blame, Plaintiff is allegedly the "assignee" of nonexistent rights and, thus, has no standing to bring this case. *See PEMEX*, 923 F. Supp. 2d at 965 (S.D. Tex. 2013). For this independent reason, Plaintiff's claims fail.

### 2. Plaintiff's Claims Are Barred by Collateral Estoppel.

The Fifth Circuit decision in *Netsphere I* and the Northern District of Texas' decisions in *Netsphere II,* and *Vogel* collaterally estop Plaintiff's claims. To establish collateral estoppel under federal law, Defendant must show: (1) the issue is identical to the issue involved in the prior litigation; (2) the issue was actually litigated in the prior litigation; and (3) the determination of the issue in the prior litigation was a crucial and necessary part of the judgment. *Rabo Agrifinance, Inc. v. Terra XXI, Ltd.,* 583 F.3d 348, 353 (5th Cir. 2009). Here, all three prongs are met.

The issues Plaintiff raises in its Complaint have been litigated and decided against Plaintiff's predecessors-in-interest. Plaintiff alleges that the domain names at issue were "improperly" placed under the control of a receivership then sold pursuant to "Improper Receivership Sale Orders." (ECF 1 ¶¶ 240-41.) But in *Netsphere I*, the Fifth Circuit held that the district court entered the Receivership Order to bring a halt to Baron's "longstanding vexatious litigation tactics," and rejected Baron's contention that the appointment of the Receiver was in bad faith or collusive. *Netsphere I,* 703 F.3d at 310-13 ("[W]e hold, based on this record, that in creating the receivership there was no malice nor wrongful purpose, and only an effort to conserve property in which the court believed it was interested in maintaining for unpaid attorney fees and to control Baron's vexatious litigation tactics.") (internal quotations omitted).

Further, on remand, the Northern District of Texas ratified the domain name sales Plaintiff challenges, finding:

> [Vogel's law firm] developed a system for determining the value of domain names that allowed it to make choices regarding the fate of individual names: whether to develop, to park, to sell or to let lapse.  This was critical because it enabled counsel … to identify money losing names that should be culled from the portfolios. Although Baron may have elected to run these businesses differently, all of the actions were reasonable and prudent ….

*Netsphere II*, 2013 WL 3327858, at *16.  On March 31, 2016, the Northern District of Texas again gave *post hoc* approval to the Receiver's actions, stating that "any claim by Plaintiffs based on the wrongful establishment or continuation of the receivership or payment of receivership expenses is an impermissible collateral attack of prior orders through this suit."  *Vogel*, 2016 WL 1273465 at *6.

Plaintiff's claims are just such "an impermissible collateral attack of prior orders" entered by the Northern District of Texas authorizing the sale of Novo Point's domain names.  *Id.*; *see also Recoveredge LP v. Pentecost*, 44 F.3d 1284, 1291 (5th Cir. 1995) ("Collateral estoppel will apply in a second proceeding that involves separate claims if the claims involve the same issue and the subject matter of the suits may be different as long as the requirements for collateral estoppel are met." (internal citations omitted)).  For this reason alone, Plaintiff's claims fail.

### 3. <u>Plaintiff Does Not Own the JTZ Mark.</u>

Plaintiff alleges a violation of the ACPA, 15 U.S.C. § 1125(d).  That statute requires Plaintiff to show that it owns the JTZ mark.  *See* 15 U.S.C. § 1125(d)(1)(A) (emphasis added) ("A person shall be liable in a civil action by the *owner of a mark*, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person--(i) has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section.").

Plaintiff does not claim any trademark registrations.  Thus, Plaintiff must establish a common law trademark right, which can only be  "acquired by actual use of the mark in

commerce." *See Schreiber v. Dunabin*, 938 F. Supp. 2d 587, 598 (E.D. Va. 2013). Plaintiff, however, has not used the JTZ mark for almost four years. (ECF 1 ¶ 3.) By contrast, JTZ has been using the JTZ mark consistently since purchasing JTZ.com in 2012. (*See* Su Decl. at ¶ 7.) Indeed, JTZ filed a trademark application for the JTZ mark on January 7, 2015, almost a year before Plaintiff filed this lawsuit. (*See* Su Decl. at ¶ 8; Ex. D.) Neither Plaintiff, nor anyone else, filed an objection to JTZ's application. Instead, Plaintiff filed this lawsuit. The United States Patent and Trademark Office granted JTZ's application on March 29, 2016. (*See* Su Decl. at ¶ 8; Ex. E.) Because Plaintiff does not have any trademark right, its ACPA claim fails.

### 4.  **Plaintiff Cannot Establish Bad Faith.**

As part of its claim of violation of the ACPA, Plaintiff must establish that JTZ "had a bad faith intent to profit from using the [] domain name." *Lamparello v. Falwell*, 420 F.3d 309, 318 (4th Cir. 2005) (quoting *People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 367 (4th Cir. 2001)). Here, JTZ purchased the JTZ.com domain in good faith. (Su Decl. at ¶¶ 3 & 4.). Indeed, the domain name was originally purchased in good faith from Novo Point, Plaintiff's predecessor in interest, who was authorized to sell the domain name by the Northern District of Texas. *See* February 4, 2011 Order Granting the Receiver's Omnibus Motion to Permit Sales of Domain Names, *Netsphere, Inc. v. Baron*, No. 3:09-CV-0988-F (N.D. Tex. Feb. 4, 2011), ECF No. 288. JTZ acted in good faith, and in reliance on the order from the Northern District of Texas providing Mr. Nelson authority to sell JTZ.com. (*See id.*)

Plaintiff's allegations confirm that JTZ acted in good faith. Specifically, Plaintiff alleges that JTZ is a bona fide purchaser of value of JTZ.com domain name, stating that "the Northern District of Texas issued several orders permitting the receivership to sell at least some of the Subject Domain Names." (ECF 1 ¶ 241.) Contrary to Plaintiff's assertion, JTZ did not know that Nelson allegedly did not have authority to manage and transfer the domain names, and it

15

acted in good faith in acquiring the domain name.  (*See id.* ¶ 245.)  Indeed, as set forth above, JTZ sought and obtained a trademark registration for the JTZ mark.  (*See* Su Decl. at ¶ 8; Exs. D & E.)  For this independent reason, Plaintiff's ACPA claims fail.

### 5.       Plaintiff's Other Claims Fail.

Plaintiff's conversion claim fails because conversion requires a transfer done without permission.  As discussed above, however, JTZ purchased the JTZ.com domain name with the authorization of a court order, and JTZ is a bona fide purchaser of the domain, with no notice of any wrongdoing in the transfer of the domain name.  *See Fed. Ins. Co. v. Smith*, 144 F. Supp. 2d 507, 519-20 and n.28 (E.D. Va. 2001) *aff'd*, 63 F. App'x 630 (4th Cir. 2003) (noting that a transferee is not liable for conversion where it takes possession for valuable consideration).

Similarly, Plaintiff's quiet title claim fails because Plaintiff must "prove that [it] has superior title to the property."  *See Gallant v. Deutsche Bank Nat. Trust Co.*, 766 F. Supp. 2d 714, 719 (W.D. Va. 2011).  Because JTZ is a bona fide purchaser, he has superior title, and Plaintiff's quite title claim fails.

As set forth above, Defendant has multiple, independent defenses to Plaintiff's claims. This factor weighs heavily in favor of setting aside the default.

## F.       The Court Should Restore the Parties to the Position They Were in Before the Judgment.

The Court should order the JTZ.com domain name returned to JTZ, consistent with the status quo before the Judgment was entered.  Defendant understands that on June 8, 2016, the JTZ.com domain name was transferred to Plaintiff, awarding Plaintiff the final relief it sought in the Judgment.  Because the Judgment should be set aside, the Court should also order that the JTZ.com domain name be returned to JTZ during the pendency of this litigation, consistent with the procedure contemplated by the ACPA.

After setting aside a Judgment, the Court should "restore the parties to the *status quo ante.*" *In re Graziadei*, 32 F.3d 1408, 1411 (9th Cir. 1994) (italics in original); *see also Vander Zee v. Karabatsos*, 683 F.2d 832 (4th Cir. 1982) (noting that if judgment is deemed void, then Court should order restitution of payments already made on void judgment); *Belcastro v. Task Indus., Inc.*, 182 F.3d 924 (9th Cir. 1999) (italics in original) (ordering restitution of funds; "because [the movant] requested that the district court undo the effects of the 1995 default judgment it held void, the district court was required to restore the parties to the *status quo ante.*"); *Watts v. Pinckney*, 752 F.2d 406, 410 (9th Cir. 1985) (granting Rule 60 motion and finding that movant was entitled to restitution of amounts paid under vacated judgment); *Gen. Tel. Corp. v. Gen. Tel. Answering Serv.*, 277 F.2d 919, 921 (5th Cir. 1960) (setting aside judgment prohibiting use of words "General Telephone" by defendants).

Here, in setting aside the Judgment, the Court should return the domain name to JTZ, the listed registrant of JTZ.com at the inception of this litigation.  *See Belcastro*, 182 F. 3d at 942 (italics in original) (after setting aside judgment under Rule 60(b) Court will "undo the effect of that order and restore the parties to the *status quo ante.*"); *In re Graziadei*, 32 F.3d at 1411 (same).  That is also the posture contemplated by the ACPA.  The ACPA provides that when the registrar receives a copy of the Complaint in an ACPA case, it "shall" (a) deposit with the court documents sufficient to establish the court's control and authority regarding the disposition of the registration and use of the domain name to the court, and (b) "not transfer, suspend, or otherwise modify the domain name during the pendency of the action, except upon order of the court."  15 U.S.C. § 1125(d)(2)(D)(i)(I) and (d)(2)(D)(i)(II).  Accordingly, the ACPA contemplates that when an action is filed against a domain name, that domain name retains its registry status pending the outcome of the case.

17

The Court should not permit Plaintiff to benefit from the Judgment by maintaining control over JTZ.com.  Indeed, such a result would eviscerate the purpose of setting aside the Judgment, as leaving the domain name in Plaintiff's control would effectively maintain and enforce the Judgment.  As set forth above, Plaintiff's claims fail on the merits.  Plaintiff's predecessors transferred their interest in the JTZ.com domain name pursuant to orders entered by the Northern District of Texas.  *See supra* at II.E.1 & II.E.2.  Those sales have not been invalidated.  *See id.*  JTZ purchased the JTZ.com domain name for substantial value on September 3, 2012.  (Su Decl. at ¶¶ 3 & 4.)

Moreover, Plaintiff does not have a copyright interest in the JTZ mark.  *See supra* at II.E.3.  JTZ does.  Plaintiff should not be entitled to take advantage of the ACPA's substituted service provisions to obtain a Judgment where it has no copyright claim to the *res* at issue.  For all these reasons, the Court should set aside the Judgment and order Uniregistrar Corp., the currently listed registrar of the JTZ.com domain name, to take all steps within its power to transfer the domain back to JTZ, the holder of the domain before Plaintiff filed this action.

### III.  CONCLUSION

WHEREFORE, for the foregoing reasons, Defendant and JTZ respectfully request that the Court GRANT this motion setting aside the Judgment (ECF 43) and order Uniregistrar Corp., the current registrar of the JTZ.com domain name, to take all steps within its power to transfer the domain back to JTZ.

Dated:  June 14, 2016

Of Counsel:

Steven M. Geiszler
Zunxuan D. Chen
Dentons US LLP
2000 McKinney Avenue
Suite 1900
Dallas, TX 75201-1858
214-259-0900 (phone)
214-259-0910 (fax)
steven.geiszler@dentons.com
digger.chen@dentons.com

Respectfully submitted,

_/s/ Eric Y. Wu_

Lora A. Brzezynski, VSB No. 36151
Claire M. Maddox, VSB No. 71230
Eric Y. Wu, VSB No. 82829
Dentons US LLP
1900 K Street, NW
Washington, DC  20006
202-496-7500 (phone)
202-496-7756 (fax)
lora.brzezynski@dentons.com
claire.maddox@dentons.com
eric.wu@dentons.com

_Counsel for Defendant_

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on the 14th day of June, 2016, I will electronically

file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a

notification of such filing (NEF) to the following:

> Rebecca J. Stempien Coyle (VSB 71483)
> Levy & Grandinetti
> Suite 304
> 1120 Connecticut Ave., N.W.
> Washington, D.C. 20036
> (202) 429-4560
> Fax: (202) 429-4564
> mail@levygrandinetti.com
>
> *Counsel for Associated Recovery, LLC*

Dated:  June 14, 2016

> */s/ Eric Y. Wu*
> Eric Y. Wu, VSB No. 82829
> Dentons US LLP
> 1900 K Street, NW
> Washington, DC  20006
> 202-496-7500 (phone)
> 202-496-7756 (fax)
> eric.wu@dentons.com
>
> *Counsel for Defendant*