**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

Associated Recovery, LLC,                    )
                                             )
                    Plaintiff,               )
                                             )        No. 1:15-cv-1723-AJT-JFA
          v.                                 )
                                             )
John Does 1-44,                              )
                                             )
                    Defendants.              )
_____     )

In re:

| 744.COM | LNM.COM | VGJ.COM | YQT.COM |
|---|---|---|---|
| 028.COM | LUOHE.COM | WYD.COM | YRN.COM |
| 3DCAMERA.COM | MEQ.COM | XAQ.COM | YTE.COM |
| FNY.COM | OCU.COM | XFF.COM | YYG.COM |
| FX2.COM | PIXIE.COM | XSG.COM | ZDP.COM |
| FXF.COM | QMH.COM | YCX.COM | ZHD.COM |
| JTZ.COM | RUTEN.COM | YEY.COM | ZULIN.COM |
| KGJ.COM | SDU.COM | YGX.COM | ZZM.COM |
| KMQ.COM | SQG.COM | YJR.COM | |
| KOU.COM | TAOLV.COM | YJX.COM | |
| KXQ.COM | UHW.COM | YLZ.COM | |
| KXW.COM | VCZ.COM | YQP.COM | |

**PLAINTIFF'S OPPOSITION TO**
**MOTION TO SET ASIDE DEFAULT JUDGMENT**

The Plaintiff Associated Recovery, LLC (the "Plaintiff" or "Associated Recovery"), by

counsel, hereby submits this opposition to JTZ's Motion to Set Aside Default Judgment ("JTZ's

Motion to Set Aside Judgment").  ECF Nos. 45 and 46.  JTZ's Motion to Set Aside Judgment relies upon the wrong standard, and further fails to establish the necessary element of excusable neglect.  Since JTZ cannot sufficiently demonstrate grounds for relief from the default judgment under Fed. R. Civ. P 60(b)(1) the Motion to Set Aside Judgment should be denied.

## I.    INTRODUCTION

The relevant facts to this Motion are straightforward.  The Plaintiff brought this action on December 31, 2015.  ECF No. 1.  The Plaintiff sent notice of the Complaint and action to JTZ (the purported registrant of the domain name jtz.com) via email and postal mail.  *See* Exhibit 1. The Plaintiff further sent notice of all filings and order relevant to the domain name via email and postal mail.  *See* Composite Exhibits 2 and 3.  The Plaintiff never received any indication that these notices were not received.  JTZ admits it received email from the Plaintiff related to this case.  Among the notices sent were the Plaintiff's request for entry of default, the Plaintiff's request for default judgment, the Magistrate Judge's Proposed Findings of Fact and Recommendations in regard to default judgment, and the Order granting default judgment.  *See* Composite Exhibit 2, emails dates February 25, March 4, March 25, and May 19, 2016, and Composite Exhibit 3 (same dates).

JTZ never appeared in this action prior to its Motion to Set Aside Judgment.  JTZ never protested, either by opposing or seeking to set aside, the clerk's entry of default.  JTZ never opposed the Plaintiff's request for default judgment.  JTZ never appeared after the Court ordered default judgment and the transfer of the domain name, jtz.com, to the Plaintiff.   Rather, JTZ only deigned to appear *after* the domain name was transferred to the Plaintiff under the Court's Order.

JTZ admits it received notice of this case.  The only excuse it offers for its failure to timely appear or take any action prior to the enforcement of the judgment was that JTZ failed to appreciate what this case was and its implications.  Yet it appears JTZ never sought advice of counsel, or anyone for that matter, on the meaning of the notices of this action that it had undisputedly received.  The entry of default and the default judgment ordered and executed against JTZ are due entirely to JTZ's own actions.  Moreover, JTZ's *laissez faire* approach to this litigation is not excusable neglect.  Therefore, and for the reasons discussed more fully herein, the Motion to Set Aside Judgment should be denied.

## II.    THE CORRECT APPLICABLE STANDARD

JTZ's Motion conflates the separation in Fed. R. Civ. P. 55(c) between (1) entry of default and (2) default judgments, and urges the application of the standard for setting aside an entry of default.  *See* ECF No. 46, PageID# 655 ("When deciding whether to set aside *an entry of default*..." (emphasis added)).  However the instant motion is one to set aside a default judgment, *not* one to strike the entry of default, and while there may be some similarities between the applicable standards for the motions there are crucial differences as well.  One important difference is that motion to set aside a default judgment seeks relief from a final judgment, and therefore Fed. R. Civ. P. 60(b) applies.  *Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 810 (4th Cir. 1988) ("Where defaults and judgments thereon are at issue, *Rule 60(b)* must be read with due regard for *Rule 55(c)*, which provides that 'for good cause shown, the court may set aside an entry of default, and, if a judgment by default has been entered, may likewise set it aside in accordance with *Rule 60(b)*.'")

3

To prevail on a motion to set aside a default judgment the movant must meet an initial threshold and then meet the applicable requirements under Fed. R. Civ. P. 60(b).   For the initial threshold the defendant must show that (1) it timely brought its motion to set aside, (2) it has a meritorious defense, and (3) there is no unfair prejudice to the plaintiff by having the motion set aside.  *Dowell v. State Farm Fire & Cas. Auto. Ins. Co.,* 993 F.2d 46, 48 (4th Cir. 1993) and *Park Corp. v. Lexington Ins. Co.,* 812 F.2d 894, 896 (4th Cir. 1987);  *Augusta Fiberglass*, 843 F.2d at 811 (" In all cases, a Rule 60(b) movant must act in a timely fashion, must demonstrate a lack of prejudice to the non-movant, and must proffer a meritorous defense." (internal citations omitted)).  *See also Hummel v. Hall*, 868 F. Supp. 2d 543 (W.D. Va. 2012); and *Moser v. Dominion Auto Center*, 2005 U.S. Dist. LEXIS 37831, Case No. 4:04cv00092 (W.D. Va. July 19, 2005)

"After a party has crossed this initial threshold, he must then satisfy one of the six specific section of Rule 60(b)."  *Dowell*, 993 F.2d at 48.  While the Fourth Circuit "has taken an increasingly liberal view of Rule 60(b)" when a default judgment is at issue, this is not tantamount to automatic reversal of a default judgment just because the defendant" passes the initial threshold.  *Augusta Fiberglass*, 843 F.2d at 810.   The defendant must still establish that it meets the requirements of Fed. R. Civ. P. 60(b), even if the defendant was timely, has a meritorious defense and there is not prejudice to the plaintiff.  *Dowell*, 993 F.2d at 48.  *See also Hummel v. Hall*, 868 F. Supp. 2d 543 (W.D. Va. 2012) (Denying motion to set aside default judgment for lack of excusable neglect even though the defendant established timeliness, a meritorious defense, and lack of prejudice to the plaintiff.)

4

Fed. R. Civ. P. 60(b)(1), the rule relied upon by JTZ, states "[o]n motion and just terms, the court may relieve a party [] from a final judgment [for] mistake, inadvertence, surprise, or excusable neglect."  The Fourth Circuit has held that there is a distinction between Rule 60(b)(1) motions to set aside a default judgment when the cause for the default judgment was due to the defendant's counsel versus the defendant itself.  *Augusta Fiberglass*, 843 F.2d at 811.  "When the party is at fault, the [judicial systems' need for finality and efficiency in litigation] dominate [over the preference for trials on the merits] and the party must adequately defense its conduct in order to show excusable neglect." *Id*.; *see also Point PCS, LLC v. Sea Haven Realty & Constr.*, 95 Fed. Appx. 24 (4th Cir. 2004).

A defendant's "actions [do] not constitute 'excusable neglect' under *Rule 60(b)(1)* because he knowingly failed to obtain meaningful legal representation, declined to address the claims made against him, and neglected to apprise himself of the developments in the litigation, despite being served with the summons and complaint and receiving correspondence from opposing counsel admonishing him to respond."  *Jae-Young Lee v. Tae Shin*, 231 F. App'x 225, 226 (4th Cir. 2007); *see also Hummel v. Hall*, 868 F. Supp. 2d 543, 562 (W.D. Va. 2012) ("Dilatory conduct and refusal to respond to the allegations in a complaint do not amount to excusable neglect.  Indeed, they could not, because neither the Federal Rules of Civil Procedure nor the efficient operation of the courts permit a defendant who has been properly served with a complaint to wait on the sidelines, deigning to engage with the matter only upon its unfavorable resolution.")

5

## III.     JTZ FAILS TO ESTABLISH EXCUSABLE NEGLECT

Assuming, *arguendo*, that JTZ can pass the initial threshold, its Motion should be denied

because it fails to establish excusable neglect or any other basis for relief from judgment under

Fed. R. Civ. P. 60(b)(1).  The only "reason" proffered by JTZ for its failure to respond to this

action (which JTZ admits it was aware of) is that it failed to appreciate the seriousness of the

litigation.  JTZ couches this "reason" as a form of excusable neglect and cites to several cases in

support.  As an initial matter, JTZ cites to three cases regarding a defendant's lack of notice:

*Marshall v. Boyd*, 658 F.2d 552 (8th Cir. 1981); *Lutomski v. Panther Valley*, 653 F.2d 270 (6th

Cir. 1981); and *Wilson v. Moore*, 564 F.2d 366 (9th Cir. 1977).  In *Marshall* the district court

"entered default *sua sponte* without first giving appellants notice that it was contemplating such

action."  658 F.2d at 555.  The Court noted that "[h]ad appellants been notified of the impending

default and given an opportunity to object we might have a different case."  *Id*.  In *Lutomski* the

defendant had engaged in informal communications, including settlement discussions, with the

plaintiff.  This was sufficient to constitute an "appearance" under Fed. R. Civ. P. 55(b)(2) and

therefore the defendant was entitled to written notice of the application for default judgment at

least three days prior to the hearing.  653 F.2d at 271.  Finally, in *Wilson* the Ninth Circuit,

which upheld the denial of the motion to set aside a default judgment, also discussed the notice

provision under Fed. R. Civ. P. 55(b)(2).

In this case Fed. R. Civ. P. 55(b)(2) is inapplicable, and so is JTZ's case law.  JTZ never

appeared, nor did it have any communications with Plaintiff's counsel to even warrant a

discussion of the application of Fed. R. Civ. P. 55(b)(2).  Finally, JTZ did receive notice of the

request for default judgment prior to the Order of Judgment.  Indeed,  JTZ never asserts that it

6

lacked notice.  In contrast JTZ admits it knew of the case, but essentially ignored it because he "was unaware of the nature of this action" because his primary language is Chinese.

JTZ then cites to *Avon Contractors, Inc. v. Sec'y of Labor*, 372 F.3d 171 (3d. Cir. 2004) and *Colleton Prepatory Acad., Inc. v. Hoover Universal*, 616 F.3d 413 (4th Cir. 2010) to support the statement that lack of notice justified relief from default even when the defendant was properly served.  Again, neither of these cases are helpful to JTZ.  As noted by JTZ in its Motion, in *Avon Contractors* a receptionist had destroyed the service of the complaint.  The Court, in finding excusable neglect, found that when the certified mail was sent to the defendant, " there [was] no evidence that it was within [the defendant's] control to prevent the unforeseeable acts of destruction by its employee." 372 F.3d at 175.  Similarly the default judgment in *Colleton* was caused by a mishandling of service of process (by the company's agent) resulting in the defendant not knowing of the lawsuit.   Both *Avon Contractors* and *Colleton* are easily distinguished from the present case.  Here, the neglect at issue was not due to an employee or agent of JTZ's destruction or mishandling of anything.  Rather, it is due solely to JTZ"s decision to take no action or investigation once it learned of this case.  There is no one JTZ can blame for its failure to appear or act except itself.  This is *not* excusable neglect.

In contrast to each of JTZ's cited cases the relevant facts here are (1) JTZ admits that it received "an email," (2) JTZ never asserts that it failed to receive notice of the litigation, entry of default, or the default judgment itself, (3) JTZ never asserts that the email address or postal address used by the Plaintiff to send notice to JTZ throughout the litigation were incorrect, and (4) JTZ never asserts that it relied upon counsel or anyone else for its failure to respond.

It is unknown from JTZ's Motion and supporting documents which of the 10 emails sent by Plaintiff's counsel to JTZ is being referred to by JTZ. *See* Composite Exhibits 1 and 2. However, since JTZ admits to receiving at least one email from the Plaintiff's counsel, and all of the emails to JTZ sent by Plaintiff's counsel were sent to the same email address - JTZ presumably received each and every email.  The Plaintiff further notes that the mailing address to which paper copies of each of the emailed filings was sent matches the mailing address provided in the WhoIs records offered by JTZ.[1]

The first email sent to JTZ, which included the Complaint, included information that the "Complaint had been filed in the United States District Court for the Eastern District of Virginia regarding this domain name" and invited the current registrant of the domain name jtz.com to let the Plaintiff's counsel know of "any facts or law regarding this matter that [the current registrant] believe[d the Plaintiff] should be made aware of."  Composite Exhibit 1.   JTZ never contacted the Plaintiff's counsel in this matter.

JTZ admits it received notice of this action.  It received 10 emails forwarding filings and orders in the case.  Yet JTZ never took any steps to obtain legal representation or address the claims made in the case.  Indeed it appears JTZ never even took any steps to inquire into what the papers it was receiving meant or their implication during the more than five month period from the December 31, 2015, email (regarding the filing of the Complaint) until the execution of the default judgment and transfer of jtz.com.  There was even a time period of three weeks

---

[1]Some of the mail sent to the defendants in China have been returned to the Plaintiff's counsel as undeliverable, despite the mailing addresses being taken directly from the WhoIs records for the domain names.  The Plaintiff's counsel has reviewed the returned mail received to date and none of the envelopes were addressed to JTZ.

between the entry of the default judgment, sent by email to the defendants on May 19, 2016, and the time when the domain names were transferred.  This time period is nearly eleven weeks between the Magistrate Judge's Proposed Findings of Fact and Recommendation to enter the judgment and the transfer of the domain names.   JTZ neglected to apprise itself of the developments in the litigation, despite being served with the Complaint and numerous other emails from the Plaintiff's counsel (plus mailed copies) of filings and orders pertaining to the jtz.com domain name.  JTZ has, after notice of the action and ongoing notice of the status of the action, waited on the sidelines and has only now, after its unfavorable resolution was executed, sought to engage with the matter.

In its Motion to Set Aside Judgment, JTZ references and relies upon the fact that *other* defendants appeared before this Court *earlier* and filed a motion to strike entry of default. This argument however does little to establish the relief sought in JTZ's current Motion to Set Aside Judgment.  As noted above a different standard applies to a motion to strike entry of default and one to set aside a default judgment.  Moreover, the fact the other defendants (all of whom are also Chinese) did appear before this Court to protest the entry of default establishes that a reasonably prudent person, even for a foreign defendant for whom English is not a primary language, would make the necessary inquiries to determine its risk and exposure when a case is brought against their domain name *and* enter an appearance to protest the case.  Yet JTZ did none of this.  The fact that other Chinese defendants did file responsive pleadings (the parties transferred) and a different group of Chinese defendants did file a motion to strike entry of

default emphasizes the untimeliness of JTZ's action and the inexcusable nature of its neglect in

failing to appear earlier in this case.[2]

Just as with the defendants in *Jae-Young Lee*, 231 F. App'x 225 and *Hummel*, 868

F. Supp. 2d 543, JTZ's actions are solely its own responsibility and do not constitute excusable

neglect under Fed. R. 60(b)(1).  JTZ's "[d]ilatory conduct and refusal to respond to the

allegations in a complaint [and refusal to even try to understand the implications of the ongoing

papers being sent by email and mail to it] do not amount to excusable neglect." *Hummel* , 868 F.

Supp. 2d at 562.  Therefore, JTZ's Motion to Set Aside should be denied.

## IV.    JTZ FAILS TO EVEN MEET ITS INITIAL THRESHOLD

While it is clear that JTZ cannot establish excusable neglect and an entitlement to relief

under Fed. R. Civ. P. 60(b)(1), the Plaintiff also addresses JTZ's failure to meet the initial

threshold.  The vast majority of JTZ's Motion to Set Aside Judgment focuses on the initial

threshold, and much of this portion is taken from JTZ's counsel's earlier motions in this case.

Since much of this discussion is irrelevant to the issue at hand and it has been thoroughly briefed

earlier, the Plaintiff refers to and incorporates its Opposition to Certain Defendants' Motion to

Set Aside the Entry of Default.  ECF No. 21.  To offer context for the instant motion the Plaintiff

does briefly discuss some of these same topics below.

The Plaintiff filed this action on December 31, 2015, and on the same day it sent notice to

the e-mail and postal addresses provided in the registrations for each of the Domain Names.  *See*

---

[2] The Plaintiff notes that JTZ states that it only recognized the importance of this action when a "friend" told it the jtz.com domain name was in dispute.  ECF No. 46-1, para. 12.  The identity of this "friend" is unknown.  Also, the other defendants who moved to strike the entry of default in this matter were spurred into action by some third party.

ECF No. 4-1, Declaration of Rebecca J. Stempien Coyle in Support of Plaintiff's Motion for

Order to Publish Notice of Action (Jan. 20, 2016) ("Coyle Jan. 20, 2016, Decl."), para. 4, and

Composite Attachment 1; *see also* ECF No. 1, para. 100.  To the extent JTZ asserts that this is

not accurate[3] such an assertion is not well taken, particularly since JTZ has not alleged it did not

receive these notices.  However, for the sake of clarity, the Plaintiff attaches hereto as Composite

Exhibit 1 the e-mails and letters, as sent, to JTZ on December 31, 2015.

### A.      JTZ Lacks a Meritorious Defense

To be a meritorious defense there must be "some possibility that the outcome . . . after a

full trial will be contrary to the result achieved by the default." *Augusta Fiberglass Coatings,*

*Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 812 (4th Cir. 1988).  JTZ offers five purported

defenses, including lack of standing, collateral estoppel, lack of ownership of the mark, lack of

bad faith by JTZ.  Each of these defenses are rooted in the receivership, which was held void by

the Fifth Circuit because the district court never had subject matter authority to create the

receivership.   JTZ never disputes this fact.   If a court lacking subject matter over the parties

imposes a receivership the receivership is improper. Moreover, if an order is issued under that

improper receivership, the order is also void and unenforceable. *Baron v. Schurig*, 2014 U.S.

Dist. LEXIS 180, *44-46 (N.D. Tex. Jan. 2, 2014).

### 1.      JTZ's Lack of Standing Defense, and Defenses as to Quiet Title and
###          Conversion, Have No Merit

JTZ's lack of standing defense, and its defenses regarding the conversion and quiet title

claims, are not meritorious because they (like the other defenses) are all hinged on the validity of

---

[3] Other defendants who did appear and moved to set aside the entry of default made the
same spurious suggestion.

the receivership.  As discussed *supra*, the receivership was void due to a lack of subject matter jurisdiction, therefore, any actions under the authority of the receivership order are void an unenforceable.

In asserting an alleged lack of standing JTZ argues there is no injury in fact because "the Court implicitly authorized the sales [through the receiversip] *post hoc*." ECF No. 46, PageID # 660.  This argument does not equate to a lack of injury in fact.  The injury in fact **was** the sale and assignment of the domain names.  That this was done pursuant to an order later held to be without jurisdiction does not "erase" the injury.  It is fundamental that a party who loses title to property sold through what is later held to be a void sale has standing to bring a claim to recover that property.  *See Ocwen Loan Servicing LLC v. Gonzalez Fin. Holdings, Inc.*, 77 F. Supp. 3d 584 (S.D. Tex. 2015).

JTZ also argues that any injury was not caused by it, because it was a bona fide purchaser for value.  However, whether or not JTZ was a bona fide purchaser for value is immaterial if both the sale and transfer of the domain names were void.  *See Ocwen Loan Servicing*, 77 F. Supp. 3d at 597-97 (citing *Slaughter v. Qualls*, 139 Tex. 340, 345, 162 S.W.2d 671 (Tex. 1942)). *See also Pemex Exploracion y Produccion v. BASF Corp.*, 2013 U.S. Dist. LEXIS 144166, *54-56 (S.D. Tex. Oct. 1, 2013) (noting that a defendant accused of conversion who asserts the defense of being a good faith purchaser for value must establish that its title was voidable and not void), and *United States v. Miller*, 2003 U.S. Dist. LEXIS 24884 (N.D. Tex. Dec. 22, 2003). (A tax sale that was invalid when it occurred did not convey any legally enforceable interest in the property to the buyer, even though the buyer was a bona fide purchaser.)  Similarly, the Defendants' argument of an implied license falls flat since its case citation refers to valid sales.

12

*McCoy v. Mitsuboshi Cutlery, Inc.*, 67 F.3d 917, 921 (Fed. Cir. 1995).  There is no indication

that the Federal Circuit ever intended to allow implied licenses when a sale was void or

otherwise improper.  Indeed, to allow such a result would fly in the face of the principle that

even a good faith purchaser does not acquire title in a void sale.

### 2.        JTZ's Collateral Estoppel Defense Has No Merit

JTZ's collateral estoppel defense also cannot impact the outcome since the issue in this

litigation is not identical to the issue involved in the *Netsphere* cases, this issue was not actually

litigated in the *Netsphere* cases, and there was no determination on this issue in the

*Netsphere* cases that was a necessary part of the judgment there.  *See Test Masters Educ. Servs.*

*v. Robin Singh Educ. Servs.*, 799 F.3d 437, 448 (5th Cir. 2015).

The issues cannot be identical because the issue in the *Netsphere* cases had a different

legal standard than the issue here.  *B&B Hardware, Inc. v. Hargis Indus.*, 135 S. Ct. 1293, 1306

(2015) ("issues are not identical if the second action involves application of a different legal

standard, even though the factual setting of both suits may be the same.") (internal quotation

omitted).  The issue in this case is the return of property to a rightful owner.  The issue in

*Netsphere I* was the propriety of the District Court's appointment of a receivership.  *Netsphere*

*II*'s issue was about the management of winding down the Receivership and the amount of fees

to be paid to the Receiver and his agents.  *Netsphere, Inc. v. Baron & Ondova Co.*, 2013 U.S.

Dist. LEXIS 94308 (N.D. Tex. May 29, 2013).  *Netsphere III* was about the Receiver's request

for Approval of Final Accounting, Application for Payment, and Request for Order of Final

Discharge.  *Vogel* was about judicial immunity as well as whether the defendants there

(including the Receiver) engaged in wrongful or sanctionable conduct in the *Netsphere* cases.

13

*Baron v. Vogel*, U.S. Dist. LEXIS 44294 (W.D. Tex. Mar. 31, 2016).  None of these issues are the issue of this case.  Nor was the issue in this litigation ever actually litigated in the prior litigations. "As a general rule, an issue is 'actually litigated' only when it is properly raised by the pleadings, submitted for a determination, and actually determined."  *Gober v. Terra+Corp.*, 100 F.3d 1195, 1203 (5th Cir. 1996) (citation omitted).  Nor is this action an "impermissible collateral attack."  Parties are allowed to "collateral[ly] attack[] a jurisdictionally void sale," as opposed to attacking the sale on direct review. *SEC v. American Capital Investments, Inc.*, 98 F.3d 1133, 1141 (9th Cir. 1996) (citing *Voorhees v. Jackson*, 35 U.S. 449 (1836))

### 3.   JTZ's Defense that the Plaintiff Lack Trademark Rights Has No Merit

In regards to the alleged lack of trademark ownership by the Plaintiff or its predecessors, trademark law recognizes that when a party is prevented from using its mark on its goods and services due to circumstances beyond its control - this lack of use is not held against the trademark owner.  *See In re Moorman Mfg. Co.,* 203 USPQ 712 (Comm'r Pats. 1979).  Here, the Plaintiff's predecessor used its domain names and e-commerce websites, including jtz.com, to advertise products for others such as furniture, watches, shoes, computers, groceries, antiques, and eyewear, and to provide a wide range of useful information, links to other sites, and other online services in the fields of sports, travel, shopping, politics, retail services, and videos.  ECF No. 1, para. 104.  The nature of these goods and services occurred on-line and via the websites and domain names.  When the Plaintiff's predecessor's ability to use its mark was taken away from it via the receivership the Plaintiff's predecessor maintained its intent to use the mark again once more - just as soon as it could get control of the mark back.

### 4.      JTZ's Defense of Lack of Bad Faith Has No Merit

JTZ's defense of its lack of bad faith also lacks merit.  JTZ claims it bought the domain name in September 2012.  Yet, as admitted in its filing with the United States Patent and Trademark Office, JTZ was not using he mark in 2012, or even 2013, or even most of 2014. *See* ECF No. 46-3.   In other words, JTZ did *not* have any trademark or intellectual property rights in the mark in the domain name when it purchased the domain name.  This is an indication of bad faith under the ACPA.

Here, since the JTZ's asserted defenses are all fatally based on an invalid receivership, there is no possibility that the results after a full trial will be contrary to the result achieved by a default, namely, the transfer of JTZ's domain name to the Plaintiff.

### B.      JTZ Did Not Act Timely

The Plaintiff has diligently endeavored to provide service, by e-mail and post, for every filing in this matter to all of the current registrants for the Domain Names, which includes JTZ. Specifically, the Plaintiff has provided JTZ notice of, by the emailing and mailing of service copies, among other docket items, the Complaint, the papers related to and including proof of notice by publication, the request for entry of default, the Clerk's entry of default, the request for entry of default judgment and the Court's entry of default judgment.  *See* Exhibits 1-3.

JTZ has been receiving service copies since December 31, 2015.  The most recent service was of the Court's Order granting default judgment, served May 19, 2016.  *See* Exhibit 2. Despite this constant notice JTZ failed to appear until June 14, 2016, with the filing of its Motion to Set Aside Judgment.

15

### C.    The Plaintiff Would Be Prejudiced

The Court entered its Order granting default judgment, including the transfer of jtz.com to the Plaintiff, on May 18, 2016.  ECF No. 42.  The domain name was subsequently transferred to the Plaintiff on or about June 8, 2016.  In other words, the judgment has already been executed and the domain transferred to the domain name registrar of the Plaintiff's choice.[4]

Finally, the Plaintiff is compelled to address the odd argument that proceeding *in rem* was improper in this case because the Plaintiff lacks a copyright.  JTZ provides no legal citations to explain this bizarre statement.  The ACPA is a provision of the Lanham Act, the federal trademark statute.  The ACPA specifically allows for proceedings *in rem* and never mentions that a plaintiff must own a copyright to invoke the *in rem* provisions.   The Plaintiff also notes that this Court already determined, based on the facts in the Complaint which JTZ also relies on, that the Plaintiff could proceed *in rem*, under the ACPA.  Dkt. 29.

## V.    CONCLUSION

To succeed on its Motion to Set Aside Judgment, JTZ must first meet an initial threshold and then establish its right to the requested relief under Fed. R. Civ. P. 60(b).  JTZ cannot make the initial threshold.  More importantly, JTZ's failure to appear in this case is *not* due to "excusable neglect" and it cannot meet the requirements of Fed. R. Civ. P. 60(b).

---

[4] The Plaintiff notes that counsel for JTZ has apparently already contacted the Plaintiff's registrar regarding the transfer.  Relevant ICANN and registry policies implemented by the registrar prohibit the transfer of the domain name for 60 days.  The Plaintiff was not contacted by JTZ or its counsel and asked if it would agree to not transfer the registrant for the domain name until the instant Motion was decided.  This lack of common courtesy was surprising.

16

WHEREFORE, for the foregoing reasons, the Plaintiff respectfully submits that JTZ's

Motion to Set Aside Default Judgment should be DENIED.

Date:   June 27, 2016

Respectfully,


_____/s/_____
Rebecca J. Stempien Coyle  (VSB# 71483)
Counsel for the Plaintiff
**Associated Recovery, LLC**
LEVY & GRANDINETTI
1120 Connecticut Avenue, N.W., Suite 304
Washington, D.C. 20036
Telephone (202) 429-4560
Facsimile (202) 429-4564
mail@levygrandinetti.com

## CERTIFICATE OF SERVICE

I, Rebecca J. Stempien Coyle, certify that on June 27, 2016, I electronically filed the

foregoing PLAINTIFF'S OPPOSITION TO MOTION TO SET ASIDE DEFAULT

JUDGMENT by using the CM/ECF system, which will then send a notification of such filing

(NEF) to the following:

Lora Brzezynski
Claire M. Maddox
Eric Wu
DENTONS US LLP
1900 K Street, N.W.
Washington, D.C. 20006
lora.brzezynski@dentons.com
claire.maddox@dentons.com
eric.wu@dentons.com

Steven M. Geiszler
Zunxuan D. Chen
DENTONS US LLP
2000 McKinney Avenue
Suite 1900
Dallas, TX 75201-1858
steven.geiszler@dentons.com
digger.chen@dentons.com

/s/
Rebecca J. Stempien Coyle
(VSB# 71483)
Counsel for the Plaintiff
**Associated Recovery, LLC**
LEVY & GRANDINETTI
1120 Connecticut Avenue, N.W.
Suite 304
Washington, D.C. 20036
Telephone (202) 429-4560
Facsimile (202) 429-4564
mail@levygrandinetti.com