IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| ASSOCIATED RECOVERY, LLC, ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| v. ) | Case No. 1:15-cv-01723-AJT-JFA |
| ) | |
| JOHN DOES 1-44, ) | |
| ) | |
| *Defendants in rem.* ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO SET ASIDE
DEFAULT JUDGMENTS REGARDING VGJ.COM AND YJX.COM AND
RETURN THOSE DOMAIN NAMES TO THEIR PRIOR OWNERS**

*In rem* Defendants VGJ.com and YJX.com, pursuant to Federal Rule of Civil Procedure 60(b), submit this Memorandum in Support of Motion to Set Aside the Default Judgments Regarding VGJ.com and YJX.com and Return Those Domain Names to Their Prior Owners obtained by Plaintiff Associated Recovery, Inc.  Defendants are domain names against which Plaintiff has brought this *in rem* action.  Defendants also seek the return of these domain names to their Chinese owners to maintain the status quo.  Defendants' counsel met and conferred in good faith with Plaintiff's counsel regarding this motion pursuant to Local Civil Rule 7(E), and had understood that as of July 15, Plaintiff had consented to the motion to set aside entry of default judgment but only opposed the return of the domain names to Mr. Huang and Ms. Lin.  Defendants' counsel thereafter sent a draft consent order to Plaintiff on July 15, 2016.  During a subsequent conversation with Plaintiff's counsel on July 18, however, Plaintiff's counsel informed Defendants' counsel that he was unable to obtain authorization from the client regarding any aspect of this Motion.

# I. STATEMENT OF FACTS

### A.     The *Netsphere* Litigation.

This dispute is related to litigation in the Northern District of Texas styled *Netsphere, Inc. v. Baron*.  The *Netsphere* litigation arose from a business dispute between Jeffrey Baron, Plaintiff's alleged predecessor in interest, and his business partner.  In the Texas Litigation, the Texas court found that Baron repeatedly engaged in vexatious and abusive litigation conduct. *Netsphere, Inc. v. Baron*, 703 F.3d 296, 302 (5th Cir. 2012) (*Netsphere I*).  In response to that conduct, the Northern District of Texas appointed Peter S. Vogel ("Vogel" or "Receiver") as the receiver for companies controlled by Baron.  *See* Order Appointing Receiver, *Netsphere, Inc. v. Baron*, No. 3:09-CV-0988-F (N.D. Tex. Nov. 24, 2010), ECF 130.

In response to Baron's continuing misconduct, the Northern District of Texas granted a motion by the Receiver to permit the sale of domain names owned by Baron's businesses, including Novo Point, LLC ("Novo Point") for the purpose of paying Novo Point's creditors. *See* February 4, 2011 Order Granting the Receiver's Omnibus Motion to Permit Sales of Domain Names, *Netsphere, Inc. v. Baron*, No. 3:09-CV-0988-F (N.D. Tex. Feb. 4, 2011), ECF 288.  The Northern District further granted the Receiver's motion to appoint Damon Nelson ("Nelson") as permanent manager of Novo Point to assist the Receiver in selling Novo Point's domain names. *See* Order Granting the Receiver's Motion to Appoint Damon Nelson as Permanent Manager of the LLCs and For Turnover of LLC Materials to Damon Nelson, *Netsphere, Inc. v. Baron*, No. 3:09-CV-0988-F (N.D. Tex. Apr. 22, 2011), ECF 473.  Mr. Nelson thus worked under the direction of the Receiver.

Although the Northern District of Texas eventually terminated the receivership, the court explicitly "retain[ed] exclusive jurisdiction . . . over any disputes that may arise concerning . . . any controversy that arises from or relates to the Receivership or actions of the Receiver or his

2

professionals." *Netsphere, Inc. v. Baron*, No. 3:09-CV-0988-F (N.D. Tex. March 27, 2015), ECF 1447 at 21.  *See also Baron v. Vogel*, No. 3:15-CV-232-L, 2016 WL 1273465, at *3 (N.D. Tex. Mar. 31, 2016) (noting that Northern District of Texas retains exclusive jurisdiction "over any disputes that might arise . . . from or relate[ ] to the receivership or actions of the receiver or his professionals").

On April 15, 2016, this Court granted the undersigned counsel's motion to transfer a portion of this case related to 28 domain names to the Northern District of Texas.  (*See* ECF 40.) On July 1, 2016, this Court set aside three default judgments and transferred three more domain names (JTZ.com, OCU.com, YTE.com) to the Northern District of Texas.  (*See* ECF 59.)

**B.     Purchases of VGJ.com and YJX.com.**

Pursuant to the Northern District of Texas's order authorizing the sale of Novo Point's domain names, Nelson sold the domain names that are the subject of this litigation, including VGJ.com and YJX.com, in 2012.  (*See* ECF 1 ¶ 241.)  The seller of the domain names in the agreements was Novopoint, LLC [*sic*], and Nelson authorized the sale and signing on behalf of Novo Point.  *Id.*  Plaintiff filed this lawsuit attempting to unwind this sale.  (*See* ECF 1 ¶¶ 240-41.)

On July 9, 2015, Huochun Huang purchased the VGJ.com domain name.  (*See* Declaration of Huochun Huang ("Huang Decl.") at ¶ 3, attached hereto as Exhibit A.)  Mr. Huang gave value for VGJ.com, and the seller caused the domain name to be transferred to eName.com, a duly accredited ICAN registrar.  (*See id.* at ¶ 4.)  Mr. Huang immediately provided accurate registrant contact information to eName.com.  (*See id.* at ¶ 5.)  Plaintiff admits that it has not used the VGJ mark since 2012.  (ECF 1 ¶ 3.)

On January 29, 2013, Chunmei Lin purchased the YJX.com domain name.  (*See* Declaration of Chunmei Lin ("Lin Decl.") at ¶ 3, attached hereto as Exhibit B.)  Ms. Lin gave

value for YJX.com, and the seller caused the domain name to be transferred to eName.com, a duly accredited ICAN registrar.  (*See id.* at ¶ 4.)  Ms. Lin immediately provided accurate registrant contact information to eName.com.  (*See id.* at ¶ 5.)  Plaintiff admits that it has not used the YJX mark since 2012.  (ECF 1 ¶ 3.)

## C.      Service of Complaint.

On December 31, 2015, Plaintiff filed this *in rem* action against various John Doe Defendants and domain names, alleging a violation of the Federal Anticybersquatting Consumer Protection Act ("ACPA") and other claims.  (*See* ECF 1.)  On January 20, 2016, Plaintiff filed a Motion for an Order to Publish Notice of Action.  (*See* ECF 3; ECF 4.)  In its Memorandum in support of that motion, Plaintiff alleged to have sent the notices "to the postal and e-mail addresses set forth in the registrations for the Domain Names."  (ECF 4 at 4.)  The Declaration in support of the motion further clarified that Plaintiff had sent copies of the Complaint "to each of the defendants via e-mail, using the e-mail addresses provided on the Whois records for each of the Internet domain names at issue," and further directed a letter to be sent "to each postal and e-mail addresses set forth in the registrations for the Domain Names" on December 31, 2015. (ECF 4-1 ¶ 4.)  Neither Plaintiff's Memorandum nor Declaration, however, include a certificate of service related to sending the Complaint.  Nor does Plaintiff identify the specific addresses to which it allegedly sent the Complaint.  Rather, the Memorandum attaches only "representative copies" of the notices, which relate to just two of the domain names at issue.  (*Id.* at Composite Attachment 1 and Attachment 2.)

On January 27, 2016, this Court issued an Order to Publish Notice of Action and directed that a copy of the order be published in *The Washington Times* "within fourteen (14) days after entry of this Order."  (ECF 6, ¶ 1.)  The Court further ordered that "[a]ny answer or other response to the Complaint should be filed . . . within twenty-one (21) days from the date of

publication of this Order in The Washington Times." (ECF 6, ¶ 2(C).) Plaintiff advised the Court that it published the Court's order in *The Washington Times* on February 3, 2016. (*See* ECF 7; ECF 7-1.)

Neither Mr. Huang nor Ms. Lin received any email notice from Plaintiff regarding this litigation, nor does either subscribe to the *Washington Times*. (Huang Decl. at ¶¶ 6-7; Lin Decl. at ¶¶ 6-7.)

**D.      Entry of Default and Other Defendants' Motion to Set Aside.**

On February 25, 2016, Plaintiff sought an entry of default against certain domain names, including VGJ.com and YJX.com. (ECF  9.) The Clerk granted the entry of default on February 26, 2016 (ECF 10), and then granted an amended entry of default on February 29, 2016 (ECF 12).

In late April and early March 2016, the domain names yyg.com, yrn.com, vcz.com, fny.com, zhd.com, and zulin.com, via their corresponding owners Liwei Liu, Dongdong Xu, Teng Wang, Xiaosheng Liu, and Feng Yan retained the undersigned counsel to set aside the default entered in this matter. The undersigned immediately prepared and filed a Motion to Set Aside Default. (*See* ECF 13.) In that motion, the Defendants argued that they acted promptly to lift the default, had a meritorious defense, and that Plaintiff would not be prejudiced by setting aside the default. (*See* ECF 14.) The Magistrate Judge granted Defendants' motion on March 18, 2016, setting aside the default as to domain names yyg.com, yrn.com, vcz.com, fny.com, zhd.com, and zulin.com. (*See* ECF 27.) VGJ.com and YJX.com remained in default because their respective owners were not aware or this litigation or its threat to their ownership. (Huang Decl. at ¶ 7; Lin Decl. at ¶ 7.)

On March 25, 2016, certain domain names, including yyg.com, yrn.com, vcz.com, fny.com, zhd.com, and zulin.com, filed a Motion to Dismiss or in the Alternative, to Transfer

Venue.  (*See* ECF 30.)  On April 15, 2016, the Court granted that motion, transferring Plaintiff's claims against those domain names to the Northern District of Texas.  (*See* ECF 40.)

On May 18, 2016, the Court granted Plaintiff's Motion for Default Judgment against VGJ.com and YJX.com and other domain name defendants.  (*See* ECF 42.)  The same day, the Court entered a Default Judgment (the "Default Judgment").  (*See* ECF 43.)  In early June 2016, the defaulted domain name was transferred to Plaintiff pursuant to the Judgment.  Defendants understand that Uniregistrar Corp. is the current registrar of VGJ.com and YJX.com.

**E.      Other Prior Defendants' Motions to Set Aside Default Judgment.**

Other defendants, JTZ.com, OCU.com, and YTE.com, filed motions to set aside the Default Judgment with respect to those domain names.  (ECF 45, 48, 51).  At a hearing on July 1, 2016, the Court granted those motions and transferred *in rem* Defendants JTZ.com, OCU.com, and YTE.com to the Northern District of Texas.  (ECF 58, 59).

**F.      Representation of VGJ.com and YJX.com**

Mr. Huang first learned of this litigation on June 13, 2016, when he received an email from eName.com that he had been delisted as registrant of VGJ.com, following which he searched for more information and retained counsel.  (Huang Decl. at ¶¶ 7-9.)  Ms. Lin first learned of this litigation on June 27, 2016 when someone questioned her why her domain name, YJX.com, was up for auction.  (Lin Decl. at ¶ 7.)  She quickly investigated the matter and retained counsel.  (*Id.* at ¶¶ 8-9).  The undersigned thereafter worked diligently to obtain the facts necessary to file this Motion.  *In rem* Defendants VGJ.com and YJX.com now file this Motion to Set Aside Default Judgment.[1]

---

[1] The undersigned counsel are aware that this is now the fourth motion seeking to set aside the default judgment entered in this action.  Counsel has not filed seriatim motions to annoy or delay in any way the proceedings.  As to be expected with multiple domain owners who live outside the United States in different locations, they have learned of the lawsuit and have sought our

## II. ARGUMENT

The court should set aside the judgment under Rule 60(b)(1).  Under that Rule, the Court may relieve a party from a final judgment for "mistake, inadvertence, surprise, or excusable neglect."  Fed. R. Civ. P. 60(b)(1).  "[A] district court should consider whether the moving party has a meritorious defense, whether it acts with reasonable promptness, the personal responsibility of the defaulting party, the prejudice to the party, whether there is a history of dilatory action, and the availability of sanctions less drastic."  *Payne ex rel. Estate of Calzada v. Brake*, 439 F.3d 198, 204-05 (4th Cir. 2006); *see also Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 420 (4th Cir. 2010) ("[W]e have analyzed Rule 55(c) and Rule 60(b) motions using the same factors.").  The decision to set aside a judgment under Rule 60 is committed to the discretion of the Court.  *Payne*, 439 F.3d at 204.

### A.   Courts Have a Strong Preference to Decide Cases On the Merits.

The Fourth Circuit has "repeatedly expressed a strong preference that, as a general matter, defaults are to be avoided and that claims and defenses be disposed of on their merits." *Saurikit, LLC v. cydia.com*, No. 1:11CV0888 JCC/JFA, 2011 WL 5843638, at *2 (E.D. Va. Nov. 21, 2011) (quoting *Colleton*, 616 F.3d at 417).  Any doubts about whether relief should be granted, moreover, should be resolved in favor of setting aside the default so that the case may be heard on the merits.  *Tolson v. Hodge*, 411 F.2d 123 (4th Cir. 1969) ("It has been held in an extensive line of decisions that Rules 55(c) and 60(b) are to be liberally construed in order to provide relief from the onerous consequences of defaults and default judgments.").  "There is much more reason for liberality in reopening a judgment when the merits of the case never have

---

assistance at varied times.  Promptly upon being contacted by these two new domain owners, we immediately began preparation of supporting declarations and a motion to file with the Court.  In addition, we just learned that another Chinese owner may seek to set aside the Default Judgment regarding yet another domain name and are trying to finalize details to likely file another motion.

been considered than there is when the judgment comes after a full trial on the merits."  Wright & Miller, § 2857 Discretion of the Court, 11 FED. PRAC. & PROC. CIV. (3d ed.).  Here, the parties dispute their respective rights and ownership interests in the VGJ.com and YJX.com domain names.  Defendants should have an opportunity to address those issues.  Further, all relevant factors weigh in favor of setting aside the Judgment.

**B.      Defendants Were Unaware of the Nature of This Action.**

Under Rule 60, courts give particular weight to a defendant's lack of notice.  *Marshall v. Boyd*, 658 F.2d 552 (8th Cir. 1981) (failure to give notice is strong factor weighing in favor of setting aside judgment); *Lutomski v. Panther Valley*, 653 F.2d 270 (6th Cir. 1981) (same); *Wilson v. Moore*, 564 F.2d 366 (9th Cir. 1977) (same).

Indeed, courts have found that a lack of notice justifies relief from default, even where the defendant was properly served.  In *Avon Contractors, Inc. v. Sec'y of Labor*, 372 F.3d 171 (3d Cir. 2004), the respondent moved to set aside a default under Rule 60(b).  Although the respondent had been properly served via certified mail, one of its employees had destroyed the mail.  The Third Circuit lifted the judgment, reasoning that the respondent's failure to answer was due to excusable neglect.  *See also Colleton*, 616 F.3d at 420 (although corporation was properly served by process mailed to its agent designated for acceptance of service of process, excusable neglect existed where agent mishandled process and defendant did not receive notice of lawsuit).

Here, the owners of VGJ.com and YJX.com did not receive emails or regular mail from Plaintiff's counsel related to this action.  (Huang Decl. at ¶ 6; Lin Decl. at ¶ 6.)  Their first notice was after they had been delisted as registrants of VGJ.com and YJX.com.  (Huang Decl. at ¶ 7; Lin Decl. at ¶ 7.)  Both owners purchased their domain names for substantial value.  (Huang Decl. at ¶ 4; Lin Decl. at ¶ 4.)  Thus, Defendants did not know that their rights and ownership

interest in VGJ.com and YJX.com were threatened by this lawsuit until after the Judgment was entered.  (Huang Decl. at ¶ 7; Lin Decl. at ¶ 7.)  And as in *Avon* and *Colleton*, Defendant's failure to respond was, *at worst*, due to excusable neglect.  *See Colleton*, 616 F.3d at 420 (setting aside default for excusable neglect where party was properly served, but agent for service mishandled process); *Avon*, 372 F.2d at 175 (finding excusable neglect under Rule 60(b) where party was properly served, but employee destroyed service of process, reasoning that opposing party would not suffer prejudice from opening default judgment).  For this reason, the Court should set aside the Default Judgment with respect to VGJ.com and YJX.com.

**C.**      <u>**Defendants Promptly Filed This Motion.**</u>

Upon discovering that their respective ownership interests in VGJ.com and YJX.com were threatened, the Defendant owners immediately sought to retain counsel in the United States and promptly filed this motion to set aside the entry of default, mere weeks after the Judgment was entered.  (Huang Decl. at ¶¶ 7-9; Lin Decl. at ¶¶ 7-9.)  Defendants' owners haves not delayed in responding to this action in bad faith.  Thus, this factor weights in favor of setting aside the Judgment.

**D.**      <u>**Plaintiff Will Not Be Prejudiced By Setting Aside the Default Judgment.**</u>

In determining whether setting aside the default would prejudice the non-defaulting party, courts consider whether the delay:

> (1) made it impossible for the non-defaulting party to present some of its evidence;
> (2) made it more difficult for the non-defaulting party to proceed with trial; (3) hampered the non-defaulting party's ability to complete discovery; and (4) was used by the defaulting party to collude or commit a fraud.

*Saurikit*, 2011 WL 5843638, at *5 (citing *Vick v. Wong*, 263 F.R.D. 325, 330 (E.D. Va. 2009)).

"In the context of a motion to set aside an entry of default, as in other contexts, delay in and of itself does not constitute prejudice to the opposing party."  *Colleton*, 616 F.3d at 418.

Here, Defendants' owners filed this Motion soon after the Judgment was entered. Plaintiff's ability to present its case and gather evidence has not been prejudiced.  *See Avon*, 372 F.2d at 175 (finding excusable neglect under Rule 60(b) where party was properly served, reasoning that opposing party would not suffer prejudice by opening default judgment).  Indeed, as discussed above, the Court only recently transferred Plaintiff's claims against other several similarly situated domain names to the Northern District of Texas (*see* ECF 40), where that court has yet to rule on the other transferred defendants' Rule 12(b) motion or Plaintiff's motion to file an amended complaint.  Moreover, **Plaintiff's Proposed Amended Complaint in the Northern District of Texas includes claims against movant Defendants VGJ.com and YJX.com**, a copy of which is provided here as Exhibit C.  In both the motion and Amended Complaint, Plaintiff is represented by the same counsel appearing here: Paul Grandinetti and Rebecca Stempien Coyle.  *See*  Exhibit C at 57.  Indeed, save for the change in court name and docket number, and the addition of Texas-specific causes of action, the Texas complaint is a copy of Plaintiff's Complaint in this Court.  Plaintiff's willingness to file the Texas complaint and voluntarily pursue its claims against the Defendants in Texas is sufficient reason for this Court to set aside the Default Judgment.

By contrast, VGJ.com and YJX.com's owners will suffer serious injury to their ownership interest in the VGJ.com and YJX.com domain names if the Court does not set aside the Judgment.  Indeed, Defendants understand that Plaintiff has already put VGJ.com and YJX.com up for auction online.  *See* Exhibit D (online auction posting for VGJ.com and YJX.com, as well as other domain names subject to the Default Judgment).  Plaintiff intends to sell the domain names, which reflects their lack of importance to Plaintiff.  Defendants, on the other hand, seek to maintain ownership of them.  To prevent the domain names from being sold

to a third party, the Court should return them to their prior owners, Mr. Huang and Ms. Lin.[2]

Thus, this factor weights in favor of setting aside the Default Judgment.

**E.    Defendants Have A Meritorious Defense.**

"[A]ll that is necessary to establish the existence of a 'meritorious defense' is a presentation or proffer of evidence, which, if believed, would permit either the Court or the jury to find for the defaulting party." *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982); *see also Cent. Operating Co. v. Util. Workers of Am., AFL-CIO*, 491 F.2d 245, 253 (4th Cir. 1974) ("[A] party is not required to establish a meritorious defense by a preponderance of the evidence. The purpose of the motion was only to open the default judgment so that there may be a trial on the merits; he did not seek a judgment in his favor.").

**1.    Plaintiff Lacks Standing.**

Neither Baron nor Novo Point could bring this suit.  Plaintiff is allegedly their assignee.[3] (ECF 1 ¶¶ 3 & 4.)  Thus, Plaintiff's claims are likewise barred.  "[T]he only injury sufficient to support an assignee's standing to assert an assigned claim is an injury suffered by the assignor, and that injury must satisfy all the requirements of constitutional standing, i.e., the injury suffered must be an injury-in-fact that is causally traceable to a named defendant and likely to be redressed by the court action." *PEMEX Exploracion y Produccion v. Murphy Energy Corp.*, 923

---

[2] The undersigned counsel respectfully submit that the Court should consider temporarily enjoining Plaintiff from auctioning or otherwise transferring any more of the domain names subject to the Default Judgment, as it is foreseeable that other foreign owners may soon seek relief.  A 90-day injunction, for example, should give adequate time for others to appear without unduly prejudicing Plaintiff, who appears intent on selling, and not keeping, the domain names.

[3] Baron controls Plaintiff; indeed, he attended a settlement conference as Plaintiff's representative.  He is directing this litigation through Plaintiff as a collateral attack on the sale of VGJ.com and YJX.com pursuant to the Northern District of Texas's orders.  His conduct caused the Northern District of Texas to appoint the Receiver.  *See* February 4, 2011 Order Granting the Receiver's Omnibus Motion to Permit Sales of Domain Names, *Netsphere, Inc. v. Baron*, No. 3:09-CV-0988-F (N.D. Tex. Feb. 4, 2011), ECF No. 288.  Baron cannot obtain a second bite at the apple by challenging those orders by using Plaintiff as a proxy in this litigation.

F. Supp. 2d 961, 965 (S.D. Tex. 2013).  "[T]he irreducible constitutional minimum of standing

contains three elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  These

elements are "(1) an 'injury in fact' that is (a) concrete and particularized and (b) actual or

imminent; (2) a causal connection between the injury and the conduct complained of; and (3) the

likelihood that a favorable decision will redress the injury."  *Croft v. Gov. of Texas*, 562 F.3d

735, 745 (5th Cir. 2009) (citing *Lujan*, 504 U.S. at 560–61).  The party invoking federal

jurisdiction bears the burden of establishing these elements."  *Lujan*, 504 U.S. at 561.

Plaintiff's allegations lack at least two requisite elements.  First, there was no injury in

fact.  Although the Fifth Circuit vacated the receivership, the sales of domain names to raise

funds needed to pay the receivership fees occurred under the court's authority. *See Baron v.

Vogel*, No. 3:15-cv-232-L, 2016 WL 1273465, *5 (N.D. Tex. Mar. 31, 2016) (finding no *ultra

vires* acts by court-appointed receiver) ("*Vogel I*").  Neither the Fifth Circuit nor the Northern

District entered any order voiding the sales.  Further, the Northern District of Texas implicitly

authorized the sales *post hoc* when it authorized payment of the receivership fees using, in part,

funds raised through the sales.  *See generally Netsphere, Inc. v. Baron*, No. 3:09-cv-988-F, 2013

WL 3327858 (N.D. Tex. May 29, 2013) ("*Netsphere II*").

Second, there is no causal connection between the alleged injury and the conduct about

which Plaintiff complains.  Assuming, *arguendo*, there were an injury, it was not caused by

Defendants, who are bona fide purchasers for value of VGJ.com and YJX.com.  *See EDS Corp.

v. Southwestern Bell Tel.*, 674 F.2d 453, 459 (5th Cir. 1982) ("A bona fide purchaser … is one

who buys property in good faith for valuable consideration and without knowledge (actual or

imputed) of outstanding claims in a third party or parties.").  Indeed, VGJ.com and YJX.com

were transferred pursuant to a contract, signed by Damon Nelson on behalf of Novo Point, without notice or mention of any alleged third-party interests.

Plaintiff's claims under the ACPA, for quiet title, and conversion all flow from Defendant's acquisition and use of domain names that were sold pursuant to the authorization of the Northern District of Texas.  The quiet title and conversion claims are extinguished by that court's orders authorizing the sales and subsequent orders authorizing payments.  As for the ACPA claims, which flow from alleged trademark rights, Defendants' use of VGJ.com and YJX.com was not only foreseeable, it was the very reason for the assignment.  Hence, Defendants enjoy an implied license from Novo Point that defeats any ACPA claim.  *See McCoy v. Misuboshi Cutlery, Inc.*, 67 F.3d 917, 920 (Fed. Cir. 1995) (implied license available even through involuntary sale).  Defendants have not injured Baron, Novo Point, or Plaintiff.  *Id.*  Any alleged injury to Baron or Novo Point (and by assignment, Plaintiff) was self-inflicted.  *See Netsphere, Inc. v. Baron*, 703 F.3d 296, 313 (5th Cir. 2012) ("the record supports that the circumstances that led to the appointment of a receiver were primarily of Baron's own making") ("*Netsphere I*").

With only Baron and Novo Point to blame, Plaintiff is allegedly the "assignee" of nonexistent rights and, thus, has no standing to bring this case.  *See PEMEX*, 923 F. Supp. 2d at 965 (S.D. Tex. 2013).  For this independent reason, Plaintiff's claims fail.

**2.      Plaintiff's Claims Are Barred by Collateral Estoppel.**

The Fifth Circuit decision in *Netsphere I* and the Northern District of Texas' decisions in *Netsphere II,* and *Vogel* collaterally estop Plaintiff's claims.  To establish collateral estoppel under federal law, Defendant must show: (1) the issue is identical to the issue involved in the prior litigation; (2) the issue was actually litigated in the prior litigation; and (3) the determination of the issue in the prior litigation was a crucial and necessary part of the judgment.

*Rabo Agrifinance, Inc. v. Terra XXI, Ltd.,* 583 F.3d 348, 353 (5th Cir. 2009).  Here, all three prongs are met.

The issues Plaintiff raises in its Complaint have been litigated and decided against Plaintiff's predecessors-in-interest.  Plaintiff alleges that the domain names at issue were "improperly" placed under the control of a receivership then sold pursuant to "Improper Receivership Sale Orders."  (ECF 1 ¶¶ 240-41.)  But in *Netsphere I*, the Fifth Circuit held that the district court entered the Receivership Order to bring a halt to Baron's "longstanding vexatious litigation tactics," and rejected Baron's contention that the appointment of the Receiver was in bad faith or collusive.  *Netsphere I,* 703 F.3d at 310-13 ("[W]e hold, based on this record, that in creating the receivership there was no malice nor wrongful purpose, and only an effort to conserve property in which the court believed it was interested in maintaining for unpaid attorney fees and to control Baron's vexatious litigation tactics.") (internal quotations omitted).

Further, on remand, the Northern District of Texas ratified the domain name sales Plaintiff challenges, finding:

> [Vogel's law firm] developed a system for determining the value of domain names that allowed it to make choices regarding the fate of individual names: whether to develop, to park, to sell or to let lapse.  This was critical because it enabled counsel … to identify money losing names that should be culled from the portfolios. Although Baron may have elected to run these businesses differently, all of the actions were reasonable and prudent ….

*Netsphere II*, 2013 WL 3327858, at *16.  On March 31, 2016, the Northern District of Texas again gave *post hoc* approval to the Receiver's actions, stating that "any claim by Plaintiffs based on the wrongful establishment or continuation of the receivership or payment of receivership expenses is an impermissible collateral attack of prior orders through this suit."  *Vogel*, 2016 WL 1273465 at *6.

14

Plaintiff's claims are just such "an impermissible collateral attack of prior orders" entered by the Northern District of Texas authorizing the sale of Novo Point's domain names. *Id.*; *see also Recoveredge LP v. Pentecost*, 44 F.3d 1284, 1291 (5th Cir. 1995) ("Collateral estoppel will apply in a second proceeding that involves separate claims if the claims involve the same issue and the subject matter of the suits may be different as long as the requirements for collateral estoppel are met." (internal citations omitted)).  For this reason alone, Plaintiff's claims fail.

### 3.    <u>Plaintiff Cannot Establish Bad Faith.</u>

As part of its claim of violation of the ACPA, Plaintiff must establish that Defendants' owners "had a bad faith intent to profit from using the [] domain name." *Lamparello v. Falwell*, 420 F.3d 309, 318 (4th Cir. 2005) (quoting *People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 367 (4th Cir. 2001)).  Here, the owners purchased VGJ.com and YJX.com in good faith.  (Huang Decl. at ¶¶ 4-5; Lin Decl. at ¶¶ 4-5.)  Indeed, the domain names were originally purchased in good faith from Novo Point, Plaintiff's predecessor in interest, who was authorized to sell the domain name by the Northern District of Texas.  *See* February 4, 2011 Order Granting the Receiver's Omnibus Motion to Permit Sales of Domain Names, *Netsphere, Inc. v. Baron*, No. 3:09-CV-0988-F (N.D. Tex. Feb. 4, 2011), ECF No. 288.

Plaintiff's allegations confirm that Defendants' owners acted in good faith.  Specifically, Plaintiff alleges that the owners are bona fide purchasers for value of the VGJ.com and YJX.com domain names, stating that "the Northern District of Texas issued several orders permitting the receivership to sell at least some of the Subject Domain Names."  (ECF 1 ¶ 241.)  Contrary to Plaintiff's assertion, the owners did not know that Nelson allegedly did not have authority to manage and transfer the domain names, and acted in good faith in acquiring the domain names. (*See id.* ¶ 245.)  For this independent reason, Plaintiff's ACPA claims fail.

**4.     Plaintiff's Other Claims Fail.**

Plaintiff's conversion claim fails because conversion requires a transfer done without permission.  As discussed above, however, the owners' predecessor-in-interest purchased the VGJ.com and YJX.com domain names with the authorization of a court order, and Domain Capital is a bona fide purchaser of the domain, with no notice of any wrongdoing in the transfer of the domain name.  *See Fed. Ins. Co. v. Smith*, 144 F. Supp. 2d 507, 519-20 and n.28 (E.D. Va. 2001) *aff'd*, 63 F. App'x 630 (4th Cir. 2003) (noting that a transferee is not liable for conversion where it takes possession for valuable consideration).

Similarly, Plaintiff's quiet title claim fails because Plaintiff must "prove that [it] has superior title to the property."  *See Gallant v. Deutsche Bank Nat. Trust Co.*, 766 F. Supp. 2d 714, 719 (W.D. Va. 2011).  Because the owners are bona fide purchasers, they has superior title, and Plaintiff's quiet title claim fails.

As set forth above, Defendants' owners have multiple, independent defenses to Plaintiff's claims.  This factor weighs heavily in favor of setting aside the default.

**F.     The Court Should Restore the Parties to the Position They Were in Before the Judgment.**

The Court should order the VGJ.com and YJX.com domain names returned to their Chinese owners, consistent with the status quo before the Judgment was entered.  Defendants' owners understand that in early June 2016, the VGJ.com and YJX.com domain names were transferred to Plaintiff, awarding Plaintiff the final relief it sought in the Judgment.  Because the Judgment should be set aside, the Court should also order that the VGJ.com and YJX.com domain names be returned to their Chinese owners during the pendency of this litigation, consistent with the procedure contemplated by the ACPA.

After setting aside a Judgment, the Court should "restore the parties to the *status quo ante*." *In re Graziadei*, 32 F.3d 1408, 1411 (9th Cir. 1994) (italics in original); *see also Vander Zee v. Karabatsos*, 683 F.2d 832 (4th Cir. 1982) (noting that if judgment is deemed void, then Court should order restitution of payments already made on void judgment); *Belcastro v. Task Indus., Inc.*, 182 F.3d 924 (9th Cir. 1999) (italics in original) (ordering restitution of funds; "because [the movant] requested that the district court undo the effects of the 1995 default judgment it held void, the district court was required to restore the parties to the *status quo ante*."); *Watts v. Pinckney*, 752 F.2d 406, 410 (9th Cir. 1985) (granting Rule 60 motion and finding that movant was entitled to restitution of amounts paid under vacated judgment); *Gen. Tel. Corp. v. Gen. Tel. Answering Serv.*, 277 F.2d 919, 921 (5th Cir. 1960) (setting aside judgment prohibiting use of words "General Telephone" by defendants).

Here, in setting aside the Judgment, the Court should return the domain name to Mr. Huang and Ms. Ling, the registrants of VGJ.com and YJX.com, respectively, at the inception of this litigation. *See Belcastro*, 182 F. 3d at 942 (italics in original) (after setting aside judgment under Rule 60(b) Court will "undo the effect of that order and restore the parties to the *status quo ante*."); *In re Graziadei*, 32 F.3d at 1411 (same). That is also the posture contemplated by the ACPA. The ACPA provides that when the registrar receives a copy of the Complaint in an ACPA case, it "shall" (a) deposit with the court documents sufficient to establish the court's control and authority regarding the disposition of the registration and use of the domain name to the court, and (b) "not transfer, suspend, or otherwise modify the domain name during the pendency of the action, except upon order of the court." 15 U.S.C. § 1125(d)(2)(D)(i)(I) and (d)(2)(D)(i)(II). Accordingly, the ACPA contemplates that when an action is filed against a domain name, that domain name retains its registry status pending the outcome of the case.

The Court should not permit Plaintiff to benefit from the Judgment by maintaining control over VGJ.com and YJX.com.  Indeed, such a result would eviscerate the purpose of setting aside the Judgment, as leaving the domain name in Plaintiff's control would effectively maintain and enforce the Judgment.  As set forth above, Plaintiff's claims fail on the merits. Plaintiff's predecessors transferred their interest in the VGJ.com and YJX.com domain names pursuant to orders entered by the Northern District of Texas.  *See supra* at II.E.1 & II.E.2.  Those sales have not been invalidated.  *See id.*  Defendants' owners purchased the domain names for substantial value (Huang Decl. at ¶ 4; Lin Decl. at ¶ 4.)

Plaintiff should not be entitled to take advantage of the ACPA's substituted service provisions to obtain a Judgment where it has no copyright claim to the *res* at issue.  For all these reasons, the Court should set aside the Judgment and order Uniregistrar Corp., the currently listed registrar of the VGJ.com and YJX.com domain names, to take all steps within its power to transfer the domain back to their owners, the holder of the domains before Plaintiff filed this action.

### III.  <u>CONCLUSION</u>

WHEREFORE, for the foregoing reasons, *in rem* Defendants VGJ.com and YJX.com, and their respective owners, respectfully request that the Court GRANT this motion setting aside the Judgment (ECF 43) and order Uniregistrar Corp., the current registrar of the VGJ.com and YJX.com domain names, to take all steps within its power to transfer the domain back Mr. Huang and Ms. Lin.  Should the Court grant this motion, Defendants anticipate they will move to dismiss under Federal Rule 12, or in the alternative, seek to transfer to the Northern District of Texas.

Dated:  July 18, 2016

Of Counsel:

Steven M. Geiszler
Zunxuan D. Chen
Dentons US LLP
2000 McKinney Avenue
Suite 1900
Dallas, TX 75201-1858
214-259-0900 (phone)
214-259-0910 (fax)
steven.geiszler@dentons.com
digger.chen@dentons.com

Respectfully submitted,

*/s/ Eric Y. Wu*
Lora A. Brzezynski, VSB No. 36151
Claire M. Maddox, VSB No. 71230
Eric Y. Wu, VSB No. 82829
Dentons US LLP
1900 K Street, NW
Washington, DC  20006
202-496-7500 (phone)
202-496-7756 (fax)
lora.brzezynski@dentons.com
claire.maddox@dentons.com
eric.wu@dentons.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 18th day of July, 2016, I will electronically

file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a

notification of such filing (NEF) to the following:

Rebecca J. Stempien Coyle (VSB 71483)
Levy & Grandinetti
Suite 304
1120 Connecticut Ave., N.W.
Washington, D.C. 20036
(202) 429-4560
Fax: (202) 429-4564
mail@levygrandinetti.com

*Counsel for Associated Recovery, LLC*


Dated:  July 18, 2016


*/s/ Eric Y. Wu*
Eric Y. Wu, VSB No. 82829
Dentons US LLP
1900 K Street, NW
Washington, DC  20006
202-496-7500 (phone)
202-496-7756 (fax)
eric.wu@dentons.com

*Counsel for Defendants*