IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| ASSOCIATED RECOVERY, LLC, | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| v. | ) Case No. 1:15-cv-01723-AJT-JFA |
| | ) |
| JOHN DOES 1-44, | ) |
| | ) |
| *Defendants in rem*. | ) |

**MEMORANDUM IN SUPPORT OF DEFENDANT 744.COM'S MOTION TO SET ASIDE DEFAULT JUDGMENT AND RETURN DOMAIN NAME TO PRIOR OWNER**

*In rem* Defendant 744.com, pursuant to Federal Rule of Civil Procedure 60(b), submits this Memorandum in Support of its Motion to Set Aside Default Judgment and Return Domain Name to Prior Owner. Defendant is one of the domain names against which Plaintiff has brought this *in rem* action. Defendant respectfully asks the Court to set aside the Default Judgment. Defendant also seeks the return of the domain names to its Chinese prior owner to maintain the status quo. Defendant's counsel met and conferred in good faith with Plaintiff's counsel regarding this motion pursuant to Local Civil Rule 7(E), and Plaintiff's counsel informed Defendant's counsel that she was unable to obtain authorization from the client regarding any aspect of this Motion.

## I. STATEMENT OF FACTS

**A.    The *Netsphere* Litigation.**

This dispute is related to litigation in the Northern District of Texas styled *Netsphere, Inc. v. Baron*. The *Netsphere* litigation arose from a business dispute between Jeffrey Baron, Plaintiff's alleged predecessor in interest, and his business partner. In the Texas Litigation, the

1

Texas court found that Baron repeatedly engaged in vexatious and abusive litigation conduct. *Netsphere, Inc. v. Baron*, 703 F.3d 296, 302 (5th Cir. 2012) (*Netsphere I*). In response to that conduct, the Northern District of Texas appointed Peter S. Vogel ("Vogel" or "Receiver") as the receiver for companies controlled by Baron. *See* Order Appointing Receiver, *Netsphere, Inc. v. Baron*, No. 3:09-CV-0988-F (N.D. Tex. Nov. 24, 2010), ECF 130.

In response to Baron's continuing misconduct, the Northern District of Texas granted a motion by the Receiver to permit the sale of domain names owned by Baron's businesses, including Novo Point, LLC ("Novo Point") for the purpose of paying Novo Point's creditors. *See* February 4, 2011 Order Granting the Receiver's Omnibus Motion to Permit Sales of Domain Names, *Netsphere, Inc. v. Baron*, No. 3:09-CV-0988-F (N.D. Tex. Feb. 4, 2011), ECF 288. The Northern District further granted the Receiver's motion to appoint Damon Nelson ("Nelson") as permanent manager of Novo Point to assist the Receiver in selling Novo Point's domain names. *See* Order Granting the Receiver's Motion to Appoint Damon Nelson as Permanent Manager of the LLCs and For Turnover of LLC Materials to Damon Nelson, *Netsphere, Inc. v. Baron*, No. 3:09-CV-0988-F (N.D. Tex. Apr. 22, 2011), ECF 473. Mr. Nelson thus worked under the direction of the Receiver.

Although the Northern District of Texas eventually terminated the receivership, the court explicitly "retain[ed] exclusive jurisdiction . . . over any disputes that may arise concerning . . . any controversy that arises from or relates to the Receivership or actions of the Receiver or his professionals." *Netsphere, Inc. v. Baron*, No. 3:09-CV-0988-F (N.D. Tex. March 27, 2015), ECF 1447 at 21. *See also Baron v. Vogel*, No. 3:15-CV-232-L, 2016 WL 1273465, at *3 (N.D. Tex. Mar. 31, 2016) (noting that Northern District of Texas retains exclusive jurisdiction "over

any disputes that might arise . . . from or relate[ ] to the receivership or actions of the receiver or his professionals").

On April 15, 2016, this Court granted the undersigned counsel's motion to transfer a portion of this case related to 28 domain names to the Northern District of Texas. (*See* ECF 40.) On July 1, 2016, this Court set aside three default judgments and transferred three more domain names (JTZ.com, OCU.com, YTE.com) to the Northern District of Texas. (*See* ECF 59.)

**B.    Purchase of 744.com.**

Pursuant to the Northern District of Texas's order authorizing the sale of Novo Point's domain names, Nelson sold the domain names that are the subject of this litigation, including 744.com, in 2012. (*See* ECF 1 ¶ 241.) The seller of the domain names in the agreements was Novopoint, LLC [*sic*], and Nelson authorized the sale and signing on behalf of Novo Point. *Id.* Plaintiff filed this lawsuit attempting to unwind this sale. (*See* ECF 1 ¶¶ 240-41.)

In October 2013, Hao Wang purchased the 744.com domain name. (*See* Declaration of Hao Wang ("Wang Decl.") at ¶ 3, attached hereto as Exhibit A.) Mr. Wang gave value for 744.com, and the seller caused the domain name to be transferred to OnlineNIC, a duly accredited ICAN registrar. (*See id.* at ¶ 4.) Mr. Wang immediately provided accurate registrant contact information to OnlineNIC. (*See id.* at ¶ 5.) Plaintiff admits that it has not used the 744 mark since 2012. (ECF 1 ¶ 3.)

**C.    Service of Complaint.**

On December 31, 2015, Plaintiff filed this *in rem* action against various John Doe Defendants and domain names, alleging a violation of the Federal Anticybersquatting Consumer Protection Act ("ACPA") and other claims. (*See* ECF 1.) On January 20, 2016, Plaintiff filed a Motion for an Order to Publish Notice of Action. (*See* ECF 3; ECF 4.) In its Memorandum in support of that motion, Plaintiff alleged to have sent the notices "to the postal and e-mail

addresses set forth in the registrations for the Domain Names." (ECF 4 at 4.) The Declaration in support of the motion further clarified that Plaintiff had sent copies of the Complaint "to each of the defendants via e-mail, using the e-mail addresses provided on the Whois records for each of the Internet domain names at issue," and further directed a letter to be sent "to each postal and e-mail addresses set forth in the registrations for the Domain Names" on December 31, 2015. (ECF 4-1 ¶ 4.) Neither Plaintiff's Memorandum nor Declaration, however, include a certificate of service related to sending the Complaint. Nor does Plaintiff identify the specific addresses to which it allegedly sent the Complaint. Rather, the Memorandum attaches only "representative copies" of the notices, which relate to just two of the domain names at issue. (*Id.* at Composite Attachment 1 and Attachment 2.)

On January 27, 2016, this Court issued an Order to Publish Notice of Action and directed that a copy of the order be published in *The Washington Times* "within fourteen (14) days after entry of this Order." (ECF 6, ¶ 1.) The Court further ordered that "[a]ny answer or other response to the Complaint should be filed . . . within twenty-one (21) days from the date of publication of this Order in The Washington Times." (ECF 6, ¶ 2(C).) Plaintiff advised the Court that it published the Court's order in *The Washington Times* on February 3, 2016. (*See* ECF 7; ECF 7-1.) Mr. Wang did not receive any email notice from Plaintiff regarding this litigation, nor does he subscribe to the *Washington Times*. (Wang Decl. at ¶¶ 6-7.)

### D.     Entry of Default and Other Defendants' Motion to Set Aside.

On February 25, 2016, Plaintiff sought an entry of default against certain domain names, including 744.com. (ECF 9.) The Clerk granted the entry of default on February 26, 2016 (ECF 10), and then granted an amended entry of default on February 29, 2016 (ECF 12).

In late April and early March 2016, the domain names yyg.com, yrn.com, vcz.com, fny.com, zhd.com, and zulin.com, via their respective owners retained the undersigned counsel

to set aside the default entered in this matter. The undersigned immediately prepared and filed a Motion to Set Aside Default. (*See* ECF 13.) In that motion, those defendants argued that they acted promptly to lift the default, had a meritorious defense, and that Plaintiff would not be prejudiced by setting aside the default. (*See* ECF 14.) The Magistrate Judge granted those defendants' motion on March 18, 2016, setting aside the default as to domain names yyg.com, yrn.com, vcz.com, fny.com, zhd.com, and zulin.com. (*See* ECF 27.) 744.com remained in default because its owner, Mr. Wang, was not aware or this litigation or its threat to his ownership. (Wang Decl. at ¶ 7.)

On March 25, 2016, certain domain names, including yyg.com, yrn.com, vcz.com, fny.com, zhd.com, and zulin.com, filed a Motion to Dismiss or in the Alternative, to Transfer Venue. (*See* ECF 30.) On April 15, 2016, the Court granted that motion, transferring Plaintiff's claims against those domain names to the Northern District of Texas. (*See* ECF 40.)

On May 18, 2016, the Court granted Plaintiff's Motion for Default Judgment against 744.com and other domain name defendants. (*See* ECF 42.) The same day, the Court entered a Default Judgment (the "Default Judgment"). (*See* ECF 43.) In early June 2016, the defaulted domain name was transferred to Plaintiff pursuant to the Judgment. Defendant understands that Uniregistrar Corp. is the current registrar of 744.com.

**E.**     **Other Prior Defendants' Motions to Set Aside Default Judgment.**

Other defendants, JTZ.com, OCU.com, and YTE.com, filed motions to set aside the Default Judgment with respect to those domain names. (ECF 45, 48, 51). At a hearing on July 1, 2016, the Court granted those motions and transferred *in rem* Defendants JTZ.com, OCU.com, and YTE.com to the Northern District of Texas. (ECF 58, 59).

**F.      Representation of 744.com**

Mr. Wang first learned of this litigation on July 9, 2016, when he learned that he had been delisted as registrant of 744.com, following which he searched for more information and retained counsel. (Wang Decl. at ¶¶ 7-9.) The undersigned thereafter worked diligently to obtain the facts necessary to file this Motion. *In rem* Defendant 744.com now files this Motion to Set Aside Default Judgment.[1]

## II. ARGUMENT

The court should set aside the judgment under Rule 60(b)(1). Under that Rule, the Court may relieve a party from a final judgment for "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). "[A] district court should consider whether the moving party has a meritorious defense, whether it acts with reasonable promptness, the personal responsibility of the defaulting party, the prejudice to the party, whether there is a history of dilatory action, and the availability of sanctions less drastic." *Payne ex rel. Estate of Calzada v. Brake*, 439 F.3d 198, 204-05 (4th Cir. 2006); *see also Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 420 (4th Cir. 2010) ("[W]e have analyzed Rule 55(c) and Rule 60(b) motions using the same factors."). The decision to set aside a judgment under Rule 60 is committed to the discretion of the Court. *Payne*, 439 F.3d at 204.

**A.      Courts Have a Strong Preference to Decide Cases On the Merits.**

The Fourth Circuit has "repeatedly expressed a strong preference that, as a general matter, defaults are to be avoided and that claims and defenses be disposed of on their merits."

---

[1] The undersigned counsel are aware that this is now the fifth motion seeking to set aside the default judgment entered in this action. Counsel has not filed seriatim motions to annoy or delay in any way the proceedings. As to be expected with multiple domain owners who live outside the United States in different locations, they have learned of the lawsuit and have sought our assistance at varied times. Promptly upon being contacted by this new domain owner, we immediately began preparation of the supporting declaration and a motion to file with the Court.

6

*Saurikit, LLC v. cydia.com*, No. 1:11CV0888 JCC/JFA, 2011 WL 5843638, at *2 (E.D. Va. Nov. 21, 2011) (quoting *Colleton*, 616 F.3d at 417). Any doubts about whether relief should be granted, moreover, should be resolved in favor of setting aside the default so that the case may be heard on the merits. *Tolson v. Hodge*, 411 F.2d 123 (4th Cir. 1969) ("It has been held in an extensive line of decisions that Rules 55(c) and 60(b) are to be liberally construed in order to provide relief from the onerous consequences of defaults and default judgments."). "There is much more reason for liberality in reopening a judgment when the merits of the case never have been considered than there is when the judgment comes after a full trial on the merits." Wright & Miller, § 2857 Discretion of the Court, 11 FED. PRAC. & PROC. CIV. (3d ed.). Here, the parties dispute their respective rights and ownership interests in the 744.com domain name. Defendant should have an opportunity to address those issues. Further, all relevant factors weigh in favor of setting aside the Default Judgment.

**B.     Defendant Was Unaware of the Nature of This Action.**

Under Rule 60, courts give particular weight to a defendant's lack of notice. *Marshall v. Boyd*, 658 F.2d 552 (8th Cir. 1981) (failure to give notice is strong factor weighing in favor of setting aside judgment); *Lutomski v. Panther Valley*, 653 F.2d 270 (6th Cir. 1981) (same); *Wilson v. Moore*, 564 F.2d 366 (9th Cir. 1977) (same).

Indeed, courts have found that a lack of notice justifies relief from default, even where the defendant was properly served. In *Avon Contractors, Inc. v. Sec'y of Labor*, 372 F.3d 171 (3d Cir. 2004), the respondent moved to set aside a default under Rule 60(b). Although the respondent had been properly served via certified mail, one of its employees had destroyed the mail. The Third Circuit lifted the judgment, reasoning that the respondent's failure to answer was due to excusable neglect. *See also Colleton*, 616 F.3d at 420 (although corporation was properly served by process mailed to its agent designated for acceptance of service of process,

7

excusable neglect existed where agent mishandled process and defendant did not receive notice of lawsuit).

Here, the owner of 744.com did not receive emails or regular mail from Plaintiff's counsel related to this action. (Wang Decl. at ¶ 6.) His first notice was after he had been delisted as registrant of 744.com. (Wang Decl. at ¶ 7.) He purchased the domain names for substantial value. (Wang Decl. at ¶ 4.) Thus, he did not know that his rights and ownership interest in 744.com were threatened by this lawsuit until after the Judgment was entered. (Wang Decl. at ¶ 7.) And as in *Avon* and *Colleton*, Defendant's failure to respond was, *at worst*, due to excusable neglect. *See Colleton*, 616 F.3d at 420 (setting aside default for excusable neglect where party was properly served, but agent for service mishandled process); *Avon*, 372 F.2d at 175 (finding excusable neglect under Rule 60(b) where party was properly served, but employee destroyed service of process, reasoning that opposing party would not suffer prejudice from opening default judgment). For this reason, the Court should set aside the Default Judgment with respect to 744.com.

**C.     Defendant Promptly Filed This Motion.**

Upon discovering that his ownership interest in 744.com was threatened, the Defendant owner immediately sought to retain counsel in the United States and promptly filed this motion to set aside the entry of default, mere weeks after the Judgment was entered. (Wang Decl. at ¶¶ 7-9.) Defendant's owner has not delayed in responding to this action in bad faith. Thus, this factor weights in favor of setting aside the Judgment.

**D.     Plaintiff Will Not Be Prejudiced By Setting Aside the Default Judgment.**

In determining whether setting aside the default would prejudice the non-defaulting party, courts consider whether the delay:

8

> (1) made it impossible for the non-defaulting party to present some of its evidence; (2) made it more difficult for the non-defaulting party to proceed with trial; (3) hampered the non-defaulting party's ability to complete discovery; and (4) was used by the defaulting party to collude or commit a fraud.

*Saurikit*, 2011 WL 5843638, at *5 (citing *Vick v. Wong*, 263 F.R.D. 325, 330 (E.D. Va. 2009)). "In the context of a motion to set aside an entry of default, as in other contexts, delay in and of itself does not constitute prejudice to the opposing party." *Colleton*, 616 F.3d at 418.

Here, Defendant's owner filed this Motion soon after the Judgment was entered. Plaintiff's ability to present its case and gather evidence has not been prejudiced. *See Avon*, 372 F.2d at 175 (finding excusable neglect under Rule 60(b) where party was properly served, reasoning that opposing party would not suffer prejudice by opening default judgment). Indeed, as discussed above, the Court only recently transferred Plaintiff's claims against other several similarly situated domain names to the Northern District of Texas (*see* ECF 40), where that court has yet to rule on the other transferred defendants' Rule 12(b) motion or Plaintiff's motion to file an amended complaint. Moreover, **Plaintiff's Proposed Amended Complaint in the Northern District of Texas includes claims against movant Defendant 744.com**, a copy of which is provided here as Exhibit B. In both the motion and Amended Complaint, Plaintiff is represented by the same counsel appearing here: Paul Grandinetti and Rebecca Stempien Coyle. *See* Exhibit B at 57. Indeed, save for the change in court name and docket number, and the addition of Texas-specific causes of action, the Texas complaint is a copy of Plaintiff's Complaint in this Court. Plaintiff's willingness to file the Texas complaint and voluntarily pursue its claims against the Defendant in Texas is sufficient reason for this Court to set aside the Default Judgment.

By contrast, 744.com's owner will suffer serious injury to his ownership interest in the 744.com domain name if the Court does not set aside the Judgment. Indeed, Defendant's owner

understands that Plaintiff has already put 744.com up for auction online. *See* Exhibit C (online auction posting for 744.com, as well as other domain names subject to the Default Judgment). Plaintiff intends to sell the domain names, which reflects their lack of importance to Plaintiff. Defendant, on the other hand, seeks to maintain ownership of 744.com. To prevent the domain name from being sold to a third party, the Court should return 744.com to its prior owner, Mr. Wang.[2] Thus, this factor weights in favor of setting aside the Default Judgment.

**E.     Defendant Has A Meritorious Defense.**

"[A]ll that is necessary to establish the existence of a 'meritorious defense' is a presentation or proffer of evidence, which, if believed, would permit either the Court or the jury to find for the defaulting party." *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982); *see also Cent. Operating Co. v. Util. Workers of Am., AFL-CIO*, 491 F.2d 245, 253 (4th Cir. 1974) ("[A] party is not required to establish a meritorious defense by a preponderance of the evidence. The purpose of the motion was only to open the default judgment so that there may be a trial on the merits; he did not seek a judgment in his favor.").

**1.     Plaintiff Lacks Standing.**

Neither Baron nor Novo Point could bring this suit. Plaintiff is allegedly their assignee.[3] (ECF 1 ¶¶ 3 & 4.) Thus, Plaintiff's claims are likewise barred. "[T]he only injury sufficient to

---

[2] The undersigned counsel respectfully submit that the Court should consider temporarily enjoining Plaintiff from auctioning or otherwise transferring any more of the domain names subject to the Default Judgment, as it is foreseeable that other foreign owners may soon seek relief. A 90-day injunction, for example, should give adequate time for others to appear without unduly prejudicing Plaintiff, who appears intent on selling, and not keeping, the domain names.

[3] Baron controls Plaintiff; indeed, he attended a settlement conference as Plaintiff's representative. He is directing this litigation through Plaintiff as a collateral attack on the sale of 744.com pursuant to the Northern District of Texas's orders. His conduct caused the Northern District of Texas to appoint the Receiver. *See* February 4, 2011 Order Granting the Receiver's Omnibus Motion to Permit Sales of Domain Names, *Netsphere, Inc. v. Baron*, No. 3:09-CV-

support an assignee's standing to assert an assigned claim is an injury suffered by the assignor, and that injury must satisfy all the requirements of constitutional standing, i.e., the injury suffered must be an injury-in-fact that is causally traceable to a named defendant and likely to be redressed by the court action." *PEMEX Exploracion y Produccion v. Murphy Energy Corp.*, 923 F. Supp. 2d 961, 965 (S.D. Tex. 2013). "[T]he irreducible constitutional minimum of standing contains three elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). These elements are "(1) an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent; (2) a causal connection between the injury and the conduct complained of; and (3) the likelihood that a favorable decision will redress the injury." *Croft v. Gov. of Texas*, 562 F.3d 735, 745 (5th Cir. 2009) (citing *Lujan*, 504 U.S. at 560–61). The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561.

Plaintiff's allegations lack at least two requisite elements. First, there was no injury in fact. Although the Fifth Circuit vacated the receivership, the sales of domain names to raise funds needed to pay the receivership fees occurred under the court's authority. *See Baron v. Vogel*, No. 3:15-cv-232-L, 2016 WL 1273465, *5 (N.D. Tex. Mar. 31, 2016) (finding no *ultra vires* acts by court-appointed receiver) ("*Vogel I*"). Neither the Fifth Circuit nor the Northern District entered any order voiding the sales. Further, the Northern District of Texas implicitly authorized the sales *post hoc* when it authorized payment of the receivership fees using, in part, funds raised through the sales. *See generally Netsphere, Inc. v. Baron*, No. 3:09-cv-988-F, 2013 WL 3327858 (N.D. Tex. May 29, 2013) ("*Netsphere II*").

Second, there is no causal connection between the alleged injury and the conduct about which Plaintiff complains. Assuming, *arguendo*, there were an injury, it was not caused by

---

0988-F (N.D. Tex. Feb. 4, 2011), ECF No. 288. Baron cannot obtain a second bite at the apple by challenging those orders by using Plaintiff as a proxy in this litigation.

11

Defendant's owner, who is a bona fide purchaser for value of 744.com. *See EDS Corp. v. Southwestern Bell Tel.*, 674 F.2d 453, 459 (5th Cir. 1982) ("A bona fide purchaser … is one who buys property in good faith for valuable consideration and without knowledge (actual or imputed) of outstanding claims in a third party or parties."). Indeed, 744.com was transferred pursuant to a contract, signed by Damon Nelson on behalf of Novo Point, without notice or mention of any alleged third-party interests.

Plaintiff's claims under the ACPA, for quiet title, and conversion all flow from Defendant's acquisition and use of domain names that were sold pursuant to the authorization of the Northern District of Texas. The quiet title and conversion claims are extinguished by that court's orders authorizing the sales and subsequent orders authorizing payments. As for the ACPA claims, which flow from alleged trademark rights, Defendant's owner's use of 744.com was not only foreseeable, it was the very reason for the assignment. Hence, Defendant enjoys an implied license from Novo Point that defeats any ACPA claim. *See McCoy v. Misuboshi Cutlery, Inc.*, 67 F.3d 917, 920 (Fed. Cir. 1995) (implied license available even through involuntary sale). Defendant has not injured Baron, Novo Point, or Plaintiff. *Id.* Any alleged injury to Baron or Novo Point (and by assignment, Plaintiff) was self-inflicted. *See Netsphere, Inc. v. Baron*, 703 F.3d 296, 313 (5th Cir. 2012) ("the record supports that the circumstances that led to the appointment of a receiver were primarily of Baron's own making") ("*Netsphere I*").

With only Baron and Novo Point to blame, Plaintiff is allegedly the "assignee" of nonexistent rights and, thus, has no standing to bring this case. *See PEMEX*, 923 F. Supp. 2d at 965 (S.D. Tex. 2013). For this independent reason, Plaintiff's claims fail.

### 2. **Plaintiff's Claims Are Barred by Collateral Estoppel.**

The Fifth Circuit decision in *Netsphere I* and the Northern District of Texas' decisions in *Netsphere II,* and *Vogel* collaterally estop Plaintiff's claims. To establish collateral estoppel

under federal law, Defendant must show: (1) the issue is identical to the issue involved in the prior litigation; (2) the issue was actually litigated in the prior litigation; and (3) the determination of the issue in the prior litigation was a crucial and necessary part of the judgment. *Rabo Agrifinance, Inc. v. Terra XXI, Ltd.,* 583 F.3d 348, 353 (5th Cir. 2009). Here, all three prongs are met.

The issues Plaintiff raises in its Complaint have been litigated and decided against Plaintiff's predecessors-in-interest. Plaintiff alleges that the domain names at issue were "improperly" placed under the control of a receivership then sold pursuant to "Improper Receivership Sale Orders." (ECF 1 ¶¶ 240-41.) But in *Netsphere I*, the Fifth Circuit held that the district court entered the Receivership Order to bring a halt to Baron's "longstanding vexatious litigation tactics," and rejected Baron's contention that the appointment of the Receiver was in bad faith or collusive. *Netsphere I,* 703 F.3d at 310-13 ("[W]e hold, based on this record, that in creating the receivership there was no malice nor wrongful purpose, and only an effort to conserve property in which the court believed it was interested in maintaining for unpaid attorney fees and to control Baron's vexatious litigation tactics.") (internal quotations omitted).

Further, on remand, the Northern District of Texas ratified the domain name sales Plaintiff challenges, finding:

> [Vogel's law firm] developed a system for determining the value of domain names that allowed it to make choices regarding the fate of individual names: whether to develop, to park, to sell or to let lapse. This was critical because it enabled counsel … to identify money losing names that should be culled from the portfolios. Although Baron may have elected to run these businesses differently, all of the actions were reasonable and prudent ….

*Netsphere II*, 2013 WL 3327858, at *16. On March 31, 2016, the Northern District of Texas again gave *post hoc* approval to the Receiver's actions, stating that "any claim by Plaintiffs based

13

on the wrongful establishment or continuation of the receivership or payment of receivership expenses is an impermissible collateral attack of prior orders through this suit." *Vogel*, 2016 WL 1273465 at *6.

Plaintiff's claims are just such "an impermissible collateral attack of prior orders" entered by the Northern District of Texas authorizing the sale of Novo Point's domain names. *Id.*; *see also Recoveredge LP v. Pentecost*, 44 F.3d 1284, 1291 (5th Cir. 1995) ("Collateral estoppel will apply in a second proceeding that involves separate claims if the claims involve the same issue and the subject matter of the suits may be different as long as the requirements for collateral estoppel are met." (internal citations omitted)). For this reason alone, Plaintiff's claims fail.

### 3. Plaintiff Cannot Establish Bad Faith.

As part of its claim of violation of the ACPA, Plaintiff must establish that Defendant's owner "had a bad faith intent to profit from using the [] domain name." *Lamparello v. Falwell*, 420 F.3d 309, 318 (4th Cir. 2005) (quoting *People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 367 (4th Cir. 2001)). Here, the owner purchased 744.com in good faith. (Wang Decl. at ¶¶ 4-5.) Indeed, the domain name was originally purchased in good faith from Novo Point, Plaintiff's predecessor in interest, who was authorized to sell the domain name by the Northern District of Texas. *See* February 4, 2011 Order Granting the Receiver's Omnibus Motion to Permit Sales of Domain Names, *Netsphere, Inc. v. Baron*, No. 3:09-CV-0988-F (N.D. Tex. Feb. 4, 2011), ECF No. 288.

Plaintiff's allegations confirm that Defendant's owner acted in good faith. Specifically, Plaintiff alleges that the owner is a bona fide purchaser for value of the 744.com domain name, stating that "the Northern District of Texas issued several orders permitting the receivership to sell at least some of the Subject Domain Names." (ECF 1 ¶ 241.) Contrary to Plaintiff's assertion, the owner did not know that Nelson allegedly did not have authority to manage and

transfer the domain names, and acted in good faith in acquiring the domain names. (*See id.* ¶ 245.) For this independent reason, Plaintiff's ACPA claims fail.

### 4. Plaintiff's Other Claims Fail.

Plaintiff's conversion claim fails because conversion requires a transfer done without permission. As discussed above, however, the owner's predecessor-in-interest purchased the 744.com domain name with the authorization of a court order, and Mr. Wang is a bona fide purchaser of the domain, with no notice of any wrongdoing in the transfer of the domain name. *See Fed. Ins. Co. v. Smith*, 144 F. Supp. 2d 507, 519-20 and n.28 (E.D. Va. 2001) *aff'd*, 63 F. App'x 630 (4th Cir. 2003) (noting that a transferee is not liable for conversion where it takes possession for valuable consideration).

Similarly, Plaintiff's quiet title claim fails because Plaintiff must "prove that [it] has superior title to the property." *See Gallant v. Deutsche Bank Nat. Trust Co.*, 766 F. Supp. 2d 714, 719 (W.D. Va. 2011). Because Mr. Wang is a bona fide purchaser, he has superior title, and Plaintiff's quiet title claim fails.

As set forth above, Defendant's owner has multiple, independent defenses to Plaintiff's claims. This factor weighs heavily in favor of setting aside the default.

### F. The Court Should Restore the Parties to the Position They Were in Before the Judgment.

The Court should order the 744.com domain name returned to its prior owner, Mr. Wang, consistent with the status quo before the Judgment was entered. Mr. Wang understands that in early June 2016, the 744.com domain name was transferred to Plaintiff, awarding Plaintiff the final relief it sought in the Judgment. Because the Judgment should be set aside, the Court should also order that the 744.com domain name be returned to Mr. Wang during the pendency of this litigation, consistent with the procedure contemplated by the ACPA.

After setting aside a Judgment, the Court should "restore the parties to the *status quo ante*." *In re Graziadei*, 32 F.3d 1408, 1411 (9th Cir. 1994) (italics in original); *see also Vander Zee v. Karabatsos*, 683 F.2d 832 (4th Cir. 1982) (noting that if judgment is deemed void, then Court should order restitution of payments already made on void judgment); *Belcastro v. Task Indus., Inc.*, 182 F.3d 924 (9th Cir. 1999) (italics in original) (ordering restitution of funds; "because [the movant] requested that the district court undo the effects of the 1995 default judgment it held void, the district court was required to restore the parties to the *status quo ante*."); *Watts v. Pinckney*, 752 F.2d 406, 410 (9th Cir. 1985) (granting Rule 60 motion and finding that movant was entitled to restitution of amounts paid under vacated judgment); *Gen. Tel. Corp. v. Gen. Tel. Answering Serv.*, 277 F.2d 919, 921 (5th Cir. 1960) (setting aside judgment prohibiting use of words "General Telephone" by defendants).

Here, in setting aside the Judgment, the Court should return the domain name to Mr. Wang, the registrant of 744.com at the inception of this litigation. *See Belcastro*, 182 F. 3d at 942 (italics in original) (after setting aside judgment under Rule 60(b) Court will "undo the effect of that order and restore the parties to the *status quo ante*."); *In re Graziadei*, 32 F.3d at 1411 (same). That is also the posture contemplated by the ACPA. The ACPA provides that when the registrar receives a copy of the Complaint in an ACPA case, it "shall" (a) deposit with the court documents sufficient to establish the court's control and authority regarding the disposition of the registration and use of the domain name to the court, and (b) "not transfer, suspend, or otherwise modify the domain name during the pendency of the action, except upon order of the court." 15 U.S.C. § 1125(d)(2)(D)(i)(I) and (d)(2)(D)(i)(II). Accordingly, the ACPA contemplates that when an action is filed against a domain name, that domain name retains its registry status pending the outcome of the case.

The Court should not permit Plaintiff to benefit from the Judgment by maintaining control over 744.com. Indeed, such a result would eviscerate the purpose of setting aside the Judgment, as leaving the domain name in Plaintiff's control would effectively maintain and enforce the Judgment. As set forth above, Plaintiff's claims fail on the merits. Plaintiff's predecessors transferred their interest in the 744.com domain name pursuant to orders entered by the Northern District of Texas. *See supra* at II.E.1 & II.E.2. Those sales have not been invalidated. *See id.* Defendant's owner purchased the domain name for substantial value (Wang Decl. at ¶ 4.)

Plaintiff should not be entitled to take advantage of the ACPA's substituted service provisions to obtain a Judgment where it has no copyright claim to the *res* at issue. For all these reasons, the Court should set aside the Judgment and order Uniregistrar Corp., the currently listed registrar of the 744.com domain name, to take all steps within its power to transfer the domain back to their owners, the holder of the domains before Plaintiff filed this action.

### III. CONCLUSION

WHEREFORE, for the foregoing reasons, *in rem* Defendant 744.com and its owner respectfully request that the Court GRANT this motion setting aside the Judgment (ECF 43) and order Uniregistrar Corp., the current registrar of the 744.com domain name, to take all steps within its power to transfer the domain back to Mr. Wang. Should the Court grant this motion, Defendant anticipates it will move to dismiss under Federal Rule 12, or in the alternative, seek to transfer to the Northern District of Texas.

| | |
|---|---|
| Dated:  July 19, 2016 | Respectfully submitted,<br><br>*/s/ Eric Y. Wu*<br>Lora A. Brzezynski, VSB No. 36151<br>Claire M. Maddox, VSB No. 71230<br>Eric Y. Wu, VSB No. 82829<br>Dentons US LLP<br>1900 K Street, NW<br>Washington, DC  20006<br>202-496-7500 (phone)<br>202-496-7756 (fax)<br>lora.brzezynski@dentons.com<br>claire.maddox@dentons.com<br>eric.wu@dentons.com<br><br><br>*Counsel for Defendant* |
| Of Counsel:<br><br>Steven M. Geiszler<br>Zunxuan D. Chen<br>Dentons US LLP<br>2000 McKinney Avenue<br>Suite 1900<br>Dallas, TX 75201-1858<br>214-259-0900 (phone)<br>214-259-0910 (fax)<br>steven.geiszler@dentons.com<br>digger.chen@dentons.com | |

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 19th day of July, 2016, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Rebecca J. Stempien Coyle (VSB 71483)
Levy & Grandinetti
Suite 304
1120 Connecticut Ave., N.W.
Washington, D.C. 20036
(202) 429-4560
Fax: (202) 429-4564
mail@levygrandinetti.com

*Counsel for Associated Recovery, LLC*

Dated:  July 19, 2016

*/s/ Eric Y. Wu*
Eric Y. Wu, VSB No. 82829
Dentons US LLP
1900 K Street, NW
Washington, DC  20006
202-496-7500 (phone)
202-496-7756 (fax)
eric.wu@dentons.com

*Counsel for Defendant*